IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **CONE MILLS CORPORATION**, *et al.*, | : | Case No. 03-12944 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

## MOTION OF INTERNATIONAL TEXTILE GROUP, INC. FOR ORDER DIRECTING THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, CROMPTON COLORS, INC. AND CROMPTON CORP. TO COMPLY WITH THE SALE ORDER

International Textile Group, Inc., formerly known as WLR Cone Mills Acquisition LLC,[1] (the "Buyer"), by and through its undersigned counsel, hereby moves for an Order directing the New Jersey Department of Environmental Protection (the "NJDEP"), the Administrator of the New Jersey Spill Compensation Fund (the "Administrator"), Crompton Colors, Inc. and Crompton Corp. (collectively, "Crompton" and together with the NJDEP and the Administrator, the "Claimants") to comply with the Sale Order (as defined below) or otherwise be held in contempt pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9020 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represents as follows:

### PRELIMINARY STATEMENT

1. The Buyer purchased substantially all—but not all—of the assets and assumed certain scheduled liabilities of the Debtors and their affiliates pursuant to a section 363 sale supervised by this Court. The acquired assets, however, did <u>not</u> include certain real property, including the real property that is the subject of the liabilities being asserted by the

---

[1] On August 2, 2004, WLR Cone Mills Acquisition LLC was merged into WLR Burlington Acquisition LLC, which was renamed International Textile Group, Inc.

Claimants. As a matter of fact, the Buyer could not have bought the real property at issue because it was sold by the Debtors more than 20 years ago. Now, months after the closing on the sale, the Claimants have collaterally attacked the Buyer by filing an action against the Buyer as a successor in the Superior Court of New Jersey in flagrant violation of the substantive and injunctive provisions of this Court's Sale Order, which expressly declared that the Buyer is <u>not</u> a successor. The Buyer therefore requests that the Court enforce its Sale Order and issue an injunction against the Claimants, directing such parties to comply with the Sale Order or otherwise hold the Claimants in contempt for failure to abide by this Court's Sale Order.

## FACTUAL BACKGROUND

### A.    The Crompton Colors Site

2.    As further detailed in the Affidavit of Neil W. Koonce, Vice President and General Counsel for the Buyer, which is attached hereto as Exhibit "1", sometime after 1930 and before 1966, one of the Debtor entities, Cone Mills Corporation ("<u>Cone Corp.</u>"), purchased certain real property located at 52 Amsterdam Street in Newark, Essex County, New Jersey (the "<u>Crompton Colors Site</u>"). From 1930 through 1979, Cone Corp. conducted certain dye and chemical manufacturing operations at the Crompton Colors Site. In the late 1970's, Cone Corp. sold its product line to Ciba Geigy and in 1980, Cone Corp. sold the Crompton Colors Site to Crompton, at which time Cone Corp. also ceased and forever abandoned its dye and chemical manufacturing operations. Not surprisingly, the Buyer does not now or has it ever conducted any operations at or had anything to do with the Crompton Colors Site.

3.    Since purchasing the Crompton Colors Site from Cone Corp., Crompton has been the exclusive owner of and has been the only entity to conduct operations at the

Crompton Colors Site. After an investigation conducted by the NJDEP in 2001, which investigation revealed the existence of certain pollutants in the soils and groundwater underlying the Crompton Colors Site, Crompton undertook the cleanup of such pollutants.

**B.    The Sale Order**

4.     On September 24, 2003, Cone Corp. and certain of its affiliates filed these chapter 11 cases in this Court. The Debtors promptly commenced a sale process to sell substantially all of their assets to the highest and best bidder. After an extensive marketing process, the Buyer was selected as the highest and best bidder for the Debtors' assets.

5.     On February 12, 2004, after notice and a two-day hearing, this Court entered an "Order Authorizing (A) Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests Subject to Higher or Better Offers, (B) Approving the Amended and Restated Asset Purchase Agreement, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With Such Sale, and (D) Granting Related Relief" (the "Sale Order"), a copy of which is attached hereto as Exhibit "2". Pursuant to the Sale Order and the Amended and Restated Asset Purchase Agreement (the "APA") referenced therein, the Debtors and their affiliates sold substantially all of their assets to the Buyer. The transaction closed on March 12, 2004.

6.     The Sale Order specifically provided that the sale of the Purchased Assets defined in the APA (called the "Assets" in the Sale Order) would be free and clear of liens, claims and encumbrances, including specifically:

>all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, "Interests").

(Sale Order ¶ O).

7. Importantly, the Sale Order's findings include appropriate provisions that the Buyer would not have entered into the APA or consummated the transactions if the sale of the Assets was not free and clear of all Interests or if the Buyer would, or in the future could, be held liable for any of the Interests, including environmental liabilities. (Id. ¶ 31). Indeed, the "free and clear" language of the Sale Order was carefully crafted and specifically approved by the Court following a two-day hearing on objections by certain creditors to the sale of the Purchased Assets free and clear of all Interests; the Sale Order resolved those objections and reflects the clear intent of the parties and the Court.

8. The Sale Order goes on to provide that (i) the Debtors are authorized to perform their obligations under and comply with the terms of the APA, (id. ¶ 4), and to take all further actions as may be requested by the Buyer or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA, (id. ¶ 5); (ii) that the Order is binding on all creditors whether known or unknown, (id. ¶ 6); (iii) that the Assets are transferred free and clear of all Interests with all such Interests to attach to the net proceeds of the Sale, (id. ¶ 8); (iv) that "all persons and entities . . . including governmental . . . authorities" and other

creditors holding Interests of any kind against the Debtors or the Assets "<u>arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, and the operation of the Debtors' business prior to the Closing . . . hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Assets, such persons' or entities' Interests.</u>" (<u>Id.</u> ¶ 9) (emphasis added); and that (v) all Interests "have been unconditionally released, discharged and terminated" with respect to the Assets. (<u>Id.</u> ¶ 25).

9. Most importantly, the Sale Order provides that the Buyer "shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and <u>the Buyer shall have no successor or vicarious liabilities of any kind or character, including but not limited to any theory of</u> antitrust, <u>environmental, successor or transferee liability, de facto merger, or substantial continuity . . . with respect to the Debtors or any obligations of the Debtors arising prior to the Closing . . . .</u>" (<u>Id.</u> ¶ 31) (emphasis added). And "[f]ollowing the Closing, no holder of an Interest in the Debtors or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Interest . . . ." (<u>Id.</u> ¶ 32).

10. The Sale Order also states that "[t]his Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto . . . [and to] <u>interpret, implement, and enforce the provisions of this [Sale] Order and</u> . . . <u>protect the Buyer against (i) any of the Excluded Liabilities or (ii) any Interests in the Debtors or the Assets of any kind or nature whatsoever.</u>" (<u>Id.</u> ¶ 33) (emphasis added).

C. **The New Jersey Action**

11. Despite the multitude of applicable terms and provisions in this Court's Sale Order, the Claimants are now seeking to impose liabilities upon the Buyer. Approximately

six months after entry of the Sale Order, on August 19, 2004, the NJDEP and the Administrator filed a complaint in the Superior Court of New Jersey, Law Division, Essex Vicinage No. L-6599-04 against the Buyer and Crompton (the "New Jersey Action"), a copy of which complaint is attached hereto as Exhibit "3". The complaint is premised on liabilities arising out of the Buyer's and Crompton's alleged violations of New Jersey's Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to –23.24, as well as other allegedly tortious acts.

12. On October 19, 2004, Crompton filed an Answer in the New Jersey Action, which Answer also asserted cross-claims against the Buyer. Crompton's cross-claims include *inter alia* claims for contribution and unjust enrichment. A copy of Crompton's Answer is attached hereto as Exhibit "4".

13. On November 24, 2004, in an effort to resolve the New Jersey Action as it related to the Buyer, the Buyer supplied the Claimants with a copy of the Sale Order and, subsequently, the Debtors' First Amended Disclosure Statement and other pertinent information to explain that the Buyer has nothing to do with the Crompton Colors Site. Subsequently, the Buyer's counsel in New Jersey wrote to the Claimants and requested that they drop the Buyer from the New Jersey Action in light of the information provided to the Claimants. The Claimants, however, have not abandoned their claims against the Buyer.

## JURISDICTION AND VENUE

14. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code as well as Bankruptcy Rules 9020 and 9014.

## RELIEF REQUESTED

15. The Sale Order bars government agencies such as the NJDEP and the Administrator, as well as private parties such as Crompton, from pursuing the claims being asserted in the New Jersey Action. The Court should thus direct (i) the NJDEP and the Administrator to cease prosecution of the New Jersey Action; (ii) Crompton to cease assertion of its cross-claims against the Buyer; and (iii) the Debtors to enforce the clear terms of the APA and the Sale Order by taking all steps necessary to ensure that the Buyer obtains the benefit of its bargain, and is not subjected to environmental liabilities in connection with the Crompton Colors Site.

16. If the Claimants were to continue to pursue their claims against the Buyer and refuse to withdraw their claims against the Buyer (with prejudice), then the Court should hold the Claimants in civil contempt and award the Buyer attorney's fees and costs to the extent available pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 9020 and 9014.

## ARGUMENT

**A.   The Court Should Enforce the Provisions of the Sale Order by Directing the Claimants to Cease Assertion of their Claims Against the Buyer and by Directing the Debtors to Take All Steps Necessary to Enforce the Sale Order and Protect the Buyer**

17. The claims arising from the complaint filed in the New Jersey Action and Crompton's Answer thereto violate the injunctive and discharge provisions of the Sale Order. The Sale Order could not be clearer in providing that the sale to the Buyer was free and clear of the Debtors' environmental liabilities and that Interests relating to those liabilities attached to the proceeds of the sale. The New Jersey Action and Crompton's cross-claims are nothing more

than an end-run around this Court's Sale Order. The Claimants are subject to this Court's order and injunction, which specifically held that the Buyer is to be protected from the liabilities the Claimants now seek to assert. This Court must enforce the terms of the Sale Order by directing the Claimants to cease and desist from pursuing their claims against the Buyer.

18.     The Sale Order is a final order, which the Claimants cannot now collaterally attack. See Allegheny Health, Educ. and Research Found. v. Nat'l Union of Hospital and Health Care Employees, AFSCME, AFL-CIO, District (In re Allegheny Health Educ. and Research Found.), 2004 WL 2086056, at *5 (3d Cir. Sept. 20, 2004) ("Sales Orders, which approved the [asset purchase agreement] . . . are final orders, which . . . by virtue of collateral estoppel . . . [prevents the Court from] entertain[ing] collateral attacks upon said orders.") (citation omitted) (emphasis added); see also In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 49 (Bankr. D. Del. 2001) ("[I]t is of course true that a bankruptcy court's order of confirmation [of a sale] 'is treated as a final judgment with res judicata effect . . . .'"); Rickel & Assocs., Inc. v. Smith (In re Rickel Assocs., Inc.), 272 B.R. 74, 86 (Bankr. S.D.N.Y. 2002) ("A bankruptcy court order approving a sale is a final order for res judicata purposes.").

19.     In addition, the Claimants are bound by the Sale Order despite being unknown creditors of the Debtors because the Debtors had given published notice of the sale hearing, which ultimately resulted in this Court's entry of the Sale Order. See, e.g., Rexene Corp. v. Pando (In re Rexene Corp.), 176 B.R. 732, 733 (Bankr. D. Del. 1995) ("The United States Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) held that publication notice is wholly effective as to all unknown creditors.") (emphasis added). Similarly, if the Claimants do have claims related to the

Crompton Colors Site against Cone Corp., then such claims are properly claims in the bankruptcy case against the Debtors' estates—<u>not</u> against the free and clear Buyer.[2]

20.   Furthermore, the Buyer cannot be held liable to the Claimants because the Buyer <u>never</u> exercised control or ownership of the Crompton Colors Site or the business line formerly conducted at the Crompton Colors Site. It was, in fact, a Debtor entity that owned the Crompton Colors Site and sold it to Crompton in 1980 and the Buyer simply has no connection whatsoever to the Crompton Colors Site. An essential element of successor liability under New Jersey law is that the alleged successor "essentially [undertake] the same manufacturing operations of the selling corporation", which operations resulted in the injury. <u>See</u> <u>Ramirez v. Amsted Indus. Inc.</u>, 86 N.J. 332, 347-48 (1981); <u>Potwora ex rel. Gray v. Grip</u>, 319 N.J. Super. 386, 406 (App. Div.) <u>certification denied</u> 161 N.J. 151 (1999) (corporation that manufactured similar but not the same helmet was not successor corporation). Here, the product line that resulted in the injury to the Crompton Colors Site was sold by Debtors in the late 1970's and Debtors did not continue those operations at the Crompton Colors Site or elsewhere. Accordingly, Buyer could not and did not purchase assets and continue operations that would give rise to successor liability under New Jersey law. <u>See</u> <u>Potwora</u>, 319 N.J. Super at 407 (if company is not a successor under the more exacting "product-line" theory of liability, it cannot be a successor under the traditional corporate law test).

21.   The Buyer in no way, shape or form explicitly assumed the environmental liabilities the Claimants are now asserting. Indeed, it bears repeating that the Sale Order

---

[2] The Buyer understands that the Debtors amended their schedules to list the Claimants as disputed creditors and sent them notice of the amendment allowing the Claimants to file a claim in these bankruptcy cases. Apparently and amazingly, none of the Claimants has taken the opportunity to file a claim against the Debtors' estates.

explicitly states that the Buyer "shall have no vicarious liabilities of any kind or character including but not limited to any theory of . . . environmental, successor or transferee liability, *de facto* merger or substantial continuity, whether known or unknown as of the Closing . . . ." (Sale Order ¶ 31) (emphasis added). The Claimants cannot now assert under any theory that the Buyer is liable for any environmental damage caused to the Crompton Colors Site by one of the Debtor entities. Because the Sale Order unequivocally provides the Buyer with numerous protections from exactly the types of claims now being asserted by the Claimants, the Court should therefore direct the Claimants to cease and desist the pursuit of these claims against the Buyer.

### B. The Court Should hold the Claimants in Contempt for Failure to Obey and Comply with the Terms of the Court's Sale Order

22. Section 105(a) provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from, *sua sponte*, taking any action . . . to prevent an abuse of process." 11 U.S.C. § 105(a). While a court's discretion under section 105(a) is not unlimited, section 105(a) does endow a court with broad equitable powers. See Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc., Inc.), 124 F.3d 22, 27 (1st Cir. 1997) ("[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers--where 'necessary' or 'appropriate'--to facilitate the implementation of other Bankruptcy Code provisions").

23. This Court also retains jurisdiction to enforce the terms of the Sale Order, including protecting the Buyer from any claims barred by the Sale Order. (Sale Order ¶ 33). Because the New Jersey Action as well as Crompton's cross-claims contravene the provisions and intent of the Sale Order, the Court's intervention is necessary to prevent further prosecution

of such claims. Should the Claimants continue to purse their claims despite the clear language of the Sale Order, this Court should permanently enjoin the Claimants from further violations of the Sale Order and find the Claimants in civil contempt.

24.  Indeed, there can be no dispute regarding the authority of this Court to enforce its own Orders. See Concerto Software, Inc. v. Vitaquest Int'l, Inc., 290 B.R. 448, 453 (D. Me. 2003) ("A bankruptcy court retains jurisdiction to interpret its own orders."); see also Ames Dep't Stores, Inc. et al. v. Eden Center, Inc. (In re Ames Dep't Stores, Inc.), 2004 WL 1908208, at *9 (Bankr. S.D.N.Y. Aug. 27, 2004) (stating that a bankruptcy court "has subject matter jurisdiction to enforce its orders not only because they were entered in proceedings in case under title 11 (and, indeed, in a core function) with respect to which it undoubtedly had subject matter jurisdiction, but also by reason of the power granted to any federal court to enforce its own orders.").

25.  As stated above, this Court has broad equitable powers to take actions necessary to further the provisions of the Bankruptcy Code and to provide "equitable relief appropriate to assure the orderly conduct of reorganization proceedings." In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004). To that end, this Court has the statutory authority to conduct civil contempt proceedings as well as the power to sanction parties for contempt. See, e.g., Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.), 84 B.R. 377, 385-386 (Bankr. E.D. Pa. 1988) (stating "[the 1986 Amendment to section 105(a) of the Bankruptcy Code] makes clear that Congress meant section 105 to serve as the statutory basis for the civil contempt power of bankruptcy judges.").

26. The Buyer therefore requests that pursuant to section 105(a) of the Bankruptcy Code as well as Bankruptcy Rules 9020 and 9014 that this Court exercise its contempt power and issue an Order holding the Claimants in civil contempt for their willful violations of the Sale Order for refusing to cease and desist from asserting their claims against the Buyer. The Claimants had constructive knowledge of the Sale Order since the Court entered such Order on February 10, 2004. Moreover, the Claimants had actual knowledge of the Sale Order since November 24, 2004, when the Buyer supplied a copy of the Sale Order to the Claimants. The Claimants, after having received a copy of the Sale Order, refused to withdraw their claims against the Buyer. Accordingly, the Buyer seeks a remedial Order holding the Claimants in civil contempt for their deliberate and willful violations of the Sale Order.

27. Such Order of civil contempt should also provide that the Claimants may purge themselves of this Court's finding of civil contempt if and only if the Claimants abandon their claims against the Buyer (with prejudice). An Order of civil contempt should also impose coercive monetary fines upon Crompton, which fines shall accrue and continue to compound until Crompton ceases its violations of the Sale Order. The Buyer also respectfully moves the Court for an award of attorney's fees and costs against Crompton because Crompton's contempt is based on a willful disobedience of the Sale Order. See id. at 388.

28. Finally, the Debtors themselves are required to comply with the terms of the Sale Order. Thus, to the extent that the Claimants may assess environmental liabilities in connection with the Crompton Colors Site, the Buyer respectfully submits that Claimants should pursue and assert such claims against the Debtors—the true parties in interest in the New Jersey Action. By directing the Claimants and the Debtors to obey the terms of the Sale Order, the Debtors will likely avoid incurring sizeable additional claims by the Buyer, which claims could

completely derail the Debtors' liquidation. This Court should therefore direct both the Claimants and the Debtors to comply with the Sale Order.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, the Buyer requests that this Court enter an Order directing the Claimants to comply with the Sale Order and directing the Debtors to take all steps necessary to protect the Buyer from being held responsible for any and all environmental liabilities in connection with the Crompton Colors Site. Should the Claimants continue to pursue and assert their claims against the Buyer, then the Buyer requests that this Court, upon notice to the Claimants and following a hearing on the matter, enter an Order finding the Claimants in contempt and award the Buyer attorney's fees and costs, to the extent such fees and costs are available, as a result of the Claimants' failure to obey and comply with the terms of the Sale Order.[3]

Dated: January 7, 2005
   Wilmington, Delaware

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger, Esq.
Christopher R. Donoho, Esq.
180 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

**DUANE MORRIS LLP**
Michael R. Lastowski (DE I.D. 3892)
Christopher M. Winter (DE I.D. 4163)
1100 North Market Street
Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901

Counsel for International Textile Group, Inc.

---

[3] The Buyer believes that the relief sought herein, if granted, is sufficient to provide it with protection and compensation. The Buyer does not, however, hereby waive other claims or causes of action to which it might be entitled under the Bankruptcy Code or other applicable law.