## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **CONE MILLS CORPORATION**, *et al.*, | : | **Case No. 03-12944 (MFW)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

## SUPPLEMENT TO MOTION OF INTERNATIONAL TEXTILE GROUP, INC. FOR ORDER DIRECTING THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, CROMPTON COLORS, INC. AND CROMPTON CORP. TO COMPLY WITH THE SALE ORDER

International Textile Group, Inc., formerly known as WLR Cone Mills Acquisition LLC ("ITG"), by and through its undersigned counsel, hereby supplements its motion (the "Motion to Enforce the Sale Order")[1] dated January 7, 2005, that seeks the entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund (together, the "NJDEP") as well as Crompton Colors, Inc. and Crompton Corp. (together, "Crompton") to comply with the Sale Order or otherwise be held in contempt, and in support hereof, respectfully states as follows:

### PRELIMINARY STATEMENT

1.      On January 27, 2005, this Court held a hearing to consider the Motion to Enforce the Sale Order and scheduled an evidentiary hearing to be held on February 24, 2005 at 11:00

---

[1]  Each capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the Motion to Enforce the Sale Order.  The background facts relevant to this Supplement are set forth in the Motion to Enforce the Sale Order and are incorporated by reference herein.

a.m. to determine, *inter alia*, whether Crompton[2] was a known creditor for purposes of the Sale Order.[3] (*See* Tr. at 53 ¶¶ 7-12). During the course of ensuing discovery, the Debtors produced conclusive evidence that a predecessor-in-interest to Crompton was identified by the Debtors prior to the sale as a party-in-interest to the sale, and that Crompton was given ***actual and direct notice*** of the order approving the sale.

2.    Specifically, on February 15, 2005, counsel to the Debtors reported to ITG's counsel that, upon further review, the Debtors determined that a copy of the *Supplemental Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing* (the "Sale Notice") dated November 25, 2003 (a copy of which is attached hereto as Exhibit "B") was served via Federal Express upon Crompton Corporation, Benson Road, Middlebury Connecticut, 06749. Proof of that service was established by the *Affidavit of Service of Lisa Talley* (the "Affidavit of Service") dated July 2, 2004, as filed with the bankruptcy court on July 2, 2004, [D.I. 743] (a copy of which is attached hereto as Exhibit "C"), certifying that Ms. Talley caused a copy of the Sale Notice to be served via Federal Express upon Crompton Corporation, Benson Road, Middlebury Connecticut, 06749. In

---

[2]    NJDEP has stipulated that "it received adequate notice of . . . the sale of substantially all of the Debtors' assets to WL Ross & Co. LLC . . . and agrees that it will not raise or contest the issue of notice at the [Evidentiary Hearing ]." *See Stipulation Regarding Discovery Requests of International Textile Group, Inc. and Receipt of Notice by the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund* executed on or about February 10, 2005 and filed with this Court on the same date, which is attached hereto as Exhibit "A".

[3]    A separate hearing is currently scheduled to take place before this Court on February 28, 2005, to consider, *inter alia* (a) ITG's motion dated January 10, 2005, seeking a preliminary injunction against NJDEP and Crompton(the "Injunction Motion"), and NJDEP's motion dated February 9, 2005, seeking relief from the provisions of the Sale Order, each as filed in an adversary proceeding (the "Adversary Proceeding") commenced by ITG against Crompton and the NJDEP (Adv. Pro. No. 05-50061); and (b) confirmation of the Debtors' Second Amended Chapter 11 Plan of Liquidation (the "Plan"). Nothing contained herein shall constitute a waiver of any of the rights or remedies of ITG in connection with other issues raised in the Motion to Enforce the Sale Order, the Injunction Motion, the New Jersey Action, the Adversary Proceeding, the Plan or any other matter relating to the sale or the Debtors' chapter 11 cases, and all such rights and remedies are hereby expressly reserved.

addition, the Debtors have since produced an ordinary course business record from the offices of Federal Express (a copy of which is attached hereto as Exhibit "D") which verifies that a delivery with tracking number 646295651733 was sent on November 25, 2003, from Debtors' counsel, Young, Conway, Stargatt & Taylor, LLP, and was delivered to Crompton Corporation, 199 Benson Road, Middlebury, Connecticut, 06749, on November 26, 2003, at approximately 10:23 a.m. The report included a copy of a signature acknowledging receipt.

3.     This newly discovered evidence that has been brought to ITG's attention presents unmistakable proof that, contrary to ITG's prior belief, Crompton in fact received *actual and direct* notice of the sale. The Sale Notice represents a form of notice previously approved by an order of this Court dated November 10, 2003, and reasonably describes the nature of the property being sold, the date and time of the sale hearing, and the deadline to object to the sale. As demonstrated below, the Affidavit of Service and the copy of the return receipt create the presumption that the Sale Notice was indeed sent to, and received by, Crompton, and that this presumption can only be set aside if Crompton comes forward with *clear and convincing evidence* that it has not received such notice, something it has thus far failed to do.

4.     Instead, Crompton simply avers in its opposition to ITG's Motion For Temporary Restraining Order dated January 12, 2005 (the "Opposition"), that "there was *no notice* of any kind", (Opposition ¶ 19; emphasis in original), and that Cone Mills "disregarded their obligations to provide direct written notice to Crompton." Opposition ¶ 36. To make matters worse, in a sworn affidavit submitted to the Superior Court of New Jersey, Essex County, in connection with the New Jersey Action, counsel to Crompton goes so far as to certify that he "conducted and supervised an investigation into whether Cone Mills provided *any* notice of its bankruptcy to Crompton Colors, Inc., Crompton Corp. or any affiliated entity," that the investigation included a

3

"review of the notice listings in the bankruptcy matter," and that "*[n]o such notice was given or received*." *Certification of Jerry L. Tanenbaum* dated January 7, 2003 (a copy of which is attached hereto as Exhibit "E") (emphasis added).

5.      However, as further demonstrated below, such general and patently unfounded denials are insufficient as a matter of law to overcome the insurmountable evidence now produced by the Debtors in the form of the Sale Notice and the Affidavit of Service.

6.      Faced with this new evidence, ITG respectfully submits that this Court may properly determine, as a matter of law, that Crompton has received proper and adequate notice of the pendency of the sale, the date and time of the hearing and the deadline to object to the sale. Crompton failed to appear in these chapter 11 cases, failed to file an objection to the sale and failed to appear at the sale hearing. Accordingly, ITG respectfully requests that this Court enter an order granting the Motion to Enforce the Sale Order.

**ARGUMENT**

**I.      Crompton Received Direct and Actual Notice of the Sale**

7.      The Affidavit of Service creates the presumption that Crompton received actual notice of the sale. Bankruptcy Rule 9006(e) provides that "notice by mail is complete on mailing." It is well established that mail, properly addressed, stamped and deposited into the mail is presumed to be received by the addressee. *See In re American Properties, Inc.*, 30 B.R. 247, 250 (Bankr. D. Kan. 1983); *In re Schicke*, 290 B.R. 792, 801 at n.20 (B.A.P. 10th Cir. 2003).

8.      Such a presumption can only be overcome if Crompton produces clear and convincing evidence — a heightened legal standard — that the mailing was not in fact accomplished. *See In re Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997) (J. Walsh)

4

(stating "it is a well established rule that the bar date notice is presumed to have been received by the creditor when, as here, the debtor offers proof that it was timely and properly mailed by the debtor . . . and the presumption is not rebutted by a mere denial of receipt by the creditor") (citations omitted); *see also In re Cossio*, 163 B.R. 150 (B.A.P. 9th Cir. 1994) , *aff'd.*, 56 F.3d 70 (9th Cir. 1995) (ruling that a mere statement that that a summons and complaint were not received is insufficient to rebut proof that the documents were properly mailed and therefore served); *In re Bucknum*, 951 F.2d 204, 206-07 (9th Cir. 1991) (agreeing with the bankruptcy appellate panel that a certificate of mailing creates a presumption of receipt of notice that the claimant failed to overcome); *Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495, 498-99 (B.A.P. 9th Cir. 1987) (J. Jones, concurring) (stating that an allegation by the complaining creditor or its counsel that no notice was received, by itself, does not, absent evidence that all or a substantial number of other creditors failed to receive notice, overcome the presumption).

9.      Moreover, an executed return of service is prima facie evidence of valid service which may be overcome only by strong and convincing evidence. *In re Premium Sales Corp.*, 182 B.R. 349, 351 (Bankr. S.D. Fla. 1995); *cf. In re Ted A. Petras Furs, Inc.*, 172 B.R. 170, 176 (Bankr. E.D.N.Y. 1994), *appeal dismissed*, 100 F.3d 943 (2d Cir. 1997) (stating that "it has been found by the Second Circuit that when certified mail, return receipt requested, has been used to serve process, the signed receipt by the person being served provided virtually conclusive evidence that the notice was received").

10.      In the instant case, the Sale Notice was correctly addressed.  The address used was the same address listed in Crompton's business letterhead (as demonstrated by Crompton in Exhibit A to its Opposition) from which all pre-petition correspondence had been received.  The proper mailing of the Sale Notice is evidenced by both the Affidavit of Service and the return

receipt. Moreover, the signature acknowledging receipt by Crompton provides conclusive evidence that, not only was the Sale Notice mailed, but that the Sale Notice was actually received by Crompton. The Sale Notice included, among other things, (a) reference to the sale procedures motion and this Court's order approving same, (b) a sufficient description of the assets to be sold, (c) the manner in which copies of the asset purchase agreement could be obtained, (d) the date and time of the sale hearing, and (e) the deadline to object to the sale. Thus, Crompton must be deemed as a matter of law to have received actual and proper notice of the sale and the sale hearing.[4]

11. In addition to the actual notice sent to Crompton as described above, the Debtors undertook other reasonable measures designed to afford Crompton and other parties-in-interest with notice of the sale. The Debtors filed the *Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing* with this Court on November 21, 2003 [D.I. 273], which notice was electronically mailed to all those parties-in-interest that filed notices of appearance in these Chapter 11 cases (something Crompton failed to do), and served such notice via mail on the parties listed in the affidavit of service [D.I. 276] filed in connection therewith. In addition, the Debtors caused the *Notice of Sale and Auction Procedures* to be published in the national edition of *The New York Times* and *Women's Wear Daily* on November 18, 2003. *See* Affidavit of Kenneth L. Altman, dated November 19, 2003, as filed with this Court on November 19, 2003 [D.I. 278].

12. These actions, combined with the notice actually delivered to Crompton, makes clear that Crompton was reasonably — and actually — apprised of the pendency of the sale, the

---

[4] We note in passing that Crompton has failed, as a threshold matter, to prove that it has an interest in the property sold by the Debtors to ITG and that it was therefore entitled to receive notice at all. *See e.g., In re Pinnacle Brands, Inc.,* 259 B.R. 46, 53 (Bankr. D. Del. 2001 (J. Walrath) (stating that a claimant had no interest in inventory sold by the debtor and was therefore "was not entitled to notice of the sale of the inventory").

deadline to object to the sale and the date and time of the sale hearing. *See e.g., In re Grand Union, Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (stating that due process considerations mandate that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (citation omitted).

13.    Based on information available to ITG, the Debtors acted in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the orders of this Court. Despite having received actual notice and publication notice of the sale (and thus actual notice of the bankruptcy proceedings as well), Crompton appears to have sat on its rights and ignored the notices at its own peril. Crompton, a sophisticated commercial entity, failed to file a notice of appearance, failed to file an objection to the sale and failed to appear at the sale hearing, but now wishes to have another bite at the apple because it has been sued by the NJDEP. As noted by one court:

> When the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led . . . . If [the creditor] had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest.

*Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123 (9th Cir. 1983).

14.    Since, as noted above, Crompton was given actual notice of the sale (and thereby actual notice of the bankruptcy proceedings), Crompton was under a duty to promptly assert its rights. Instead, Crompton institutionally chose to ignore the notice it received at its own peril.

**WHEREFORE**, in light of the foregoing, ITG requests that this Court enter an Order (a) granting the Motion, (b) directing the NJDEP and Crompton to comply with the Sale Order and directing the Debtors to take all steps necessary to protect ITG from being held responsible for any and all environmental liabilities in connection with the Crompton Colors Site, and (c) granting ITG such other and further relief as may be just and proper.

Dated: February 21, 2005
   Wilmington, Delaware

        **STROOCK & STROOCK & LAVAN LLP**

        Lewis Kruger, Esq.
        Christopher R. Donoho, Esq.
        180 Maiden Lane
        New York, NY 10038
        Telephone: (212) 806-5400
        Facsimile: (212) 806-6006

        **DUANE MORRIS LLP**

        Michael R. Lastowski (DE I.D. 3892)
        Christopher M. Winter (DE I.D. 4163)
        1100 North Market Street, Suite 1200
        Wilmington, DE 19801
        Telephone: (302) 657-4900
        Facsimile: (302) 657-4901

        Co-counsel for International Textile Group, Inc.