**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors. | ) | |
| | | |
| CROMPTON COLORS, INC. | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-232 GMS |
| | ) | |
| INTERNATIONAL TEXTILE GROUP, | ) | |
| INC. f/k/a WLR Cone Mills Acquisition | ) | |
| LLC, f/k/a/ WLR Recovery Fund II, L.P. | ) | |
| | ) | |
| Appellee | ) | |

---

**APPELLANTS CROMTPON CORPORATION'S AND**
**CROMPTON COLORS INCORPORATED'S**
**MEMORANDUM OF LAW REGARDING THE**
**EXTINGUISHMENT OF A KNOWN CREDITOR'S**
**CLAIMS AND INTERESTS WITHOUT NOTICE OF**
**ANY KIND THAT ITS CLAIMS WERE IN JEOPARDY**

---

Docket No.: _____

Date:____ October CCHDATA 32694 2005

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT                                             1

APPELLATE JURISDICTION                                           4

ISSUES PRESENTED                                                4

STANDARD OF REVIEW                                              5

STATEMENT OF CASE                                              6

DISPOSITION BELOW                                              7

STATEMENT OF RELEVENT FACTS                                    7

    A.  Background on ITG                                        7

    B.  Underlying Liability                                     8

    C.  Cone Mills and ITG Were Well Aware of Chemtura's
        Claims Before and During the Bankruptcy, and Well
        Aware of Proper Addresses                                9

    D.  The Disregard of Mandatory Bankruptcy Notice
        Requirements                                           12

    E.  The Cure Amount Notice                                  13

    F.  Because of Invalid Service, and Failure to Utilize
        The Provided Addressees, The Cure Amount Notice
        Was Placed in an Inactive "Dead" File                     14

    G.  The Cure Amount Notice Fails to Warn Chemtura
        That its Claims May be Extinguished                        16

    H.  Cone Mills/ITG Failed to Serve Chemtura With the
        Sale Motion                                            16

CHDATA 32694_1

ARGUMENT                                                                     17

    A.  Proper Notice is Constitutionally Required                  17


    B.  The Notice Failures Here Violated the Bankruptcy
        Rules and Due Process                                       18

        1.  The Bankruptcy Court Incorrectly Interpreted
            Rule 6004(c)                                           18

            (i)   The Relationship Between Section 363
                  And Rule 6004                                     20

            (ii)  Courts are split on the terms "other
                  Interest in such property" in Section 363          21

            (iii) This New Reading still does not Require
                  That Either Sentences of Rule 6004(c)
                  need be Nullified                                 22

        2.  ITG/Cone Mills Failure to Comply with Rule 6004(c)
            And Serve Chemtura in Compliance with Rule 9014
            Means that the Sale Order Does not Apply to Chemtura     23

        3.  The Need to Serve Notice in Compliance with Rule 9014
            is Buttressed by Rule 6006                             26

        4.  The Cure Amount Notice Was Not Served in Accordance
            with Rule 2002                                         27

CONCLUSION                                                                  31

CHDATA 32694_1

## TABLE OF AUTHORITIES

**Page**

CASES

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.,*
    197 F.3d 76 (3d Cir. 1999)    5, 6

*In re Anthony Cutaia,* 206 B.R. 250 (Bankr. S.D. Fla. 1997)    18

*In re Carematrix Corp.,* 306 B.R. 478 (Bankr. D. Del 2004)    18

*In re Faden,* 96 F.3d 792 (5th Cir. 1996)    29

*In re G.S.T. Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745,
    23-24 (D. Del. July 29, 2002)    3, 5, 7,
    28, 29, 30

*In re Hechinger,* 298 F.3d 219, 224 (3d Cir. 2002)    6

*In re Illeg Indus., Inc.*, 2004 Bankr. LEXIS 1577, *89
    (Bankr. N.D. Kansas, 2004)    17, 18

*In re Joshua Slocum, Ltd.,* 99 B.F. 262 (Bankr. E.D. Pa. 1989)    26

*In re Lancaster,* 2003 Bankr. LEXIS 11 (Bankr.
    D. Idaho 2003)    24

*In re LaRouche Indus., Inc.* 307 B.R. 774 (D. Del 2004)    18

*In re Main,* 157 B.R. 786 (W.D. Pa. 1992)    24, 28

*In re Richard Allen Parish, Sr.,* 171 B.R. 138 (Bankr. M.D.
    Fla. 1994)    18

*In re Schoon,* 153 B.R. 48 (Bankr. N.D. Cal. 1993)    24

*In re Southwest Wood, Inc.,* 318 B.R. 739 (Bankr.
    W.D. Okla. 2004)    7, 25

*In re Trans World Airlines,* 96 F.3d 687 (3d Cir. 1996)    18, 22

*In re Unioil*, 948 F.2d 678, (10th Cir. 1991)    18

CHDATA 32694_1

*In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr.
    N.D. Ohio 1987) .......................................... 21

*In re Winchells, Inc.*, 106 B.R. 384 (Bankr. E.D. Pa. 1989) ........ 25

*Law Offices of David A. Boone v. Derham-Burk*, 298
    B.R. 392 (9th Cir. 2003) .................................. 6

*New York v. New York, New Haven & Hartford R.R. Co.*,
    344 U.S. 293 (1953) ....................................... 18


STATUTES

11 U.S.C. § 102(1) ............................................. 24

11 U.S.C. §363(f) ............................................. 2, 4, 6, 7
    17, 19, 20
    21, 22

28 U.S.C. § 158(a) ............................................ 4


RULES

Rule 2002 ..................................................... 3, 4, 7
    19, 21, 22
    23, 25, 27
    28, 29, 30

Rule 2002(a) .................................................. 4, 5, 20

Rule 6004 ..................................................... 3, 19, 20
    26

Rule 6004(c) .................................................. 3, 4, 7
    14, 19, 21
    22, 23, 25
    27

Rule 6006 ..................................................... 3, 4, 7
    14, 26, 27

CHDATA 32694_1

Rule 7004                                              4, 7, 23
                                                      24, 25, 26
                                                      27

Rule 7004(b)(3)                                        7, 14, 16
                                                      23, 25, 27

Rule 9014                                              4, 7, 19,
                                                      21, 22, 23
                                                      25, 26, 27


MISCELLANEOUS

*Collier on Bankruptcy*, 363.13 (15th Ed. 1992)       17, 18, 19,
                                                      23, 26

*Fortune Magazine*                                    7

*Philadelphia Inquirer*, Business Section, April 10, 2005    8

CHDATA 32694_1

## PRELIMINARY STATEMENT

In this case, the appellee, International Textile Group, Inc. ("ITG") is attempting to prevent Crompton Corporation and Crompton Colors Incorporated (hereinafter "Chemtura")[1] from bringing a successor liability claim against ITG for contribution toward the estimated $6 million Chemtura has or will in the near future spend in remediating contamination at a facility in Newark, New Jersey ("Newark Facility").  Chemtura intends to pursue a successor claim against ITG, because in March 2004 ITG purchased and now operates virtually the entire business of Cone Mills Corporation ("Cone Mills") and Cone Mills is responsible for most of the contamination that Chemtura is cleaning up at the Newark Facility.

The basis of ITG's argument as to why Chemtura is prohibited from pursuing its successor claim is that it purchased Cone Mills through a Bankruptcy Court proceeding, and the Bankruptcy Court's order states that ITG and its predecessor acquired Cone Mills free and clear of all claims, including environmental successor claims.  Since the Bankruptcy Court had the authority to enter such an order, ITG reasons that Chemtura is now precluded from proceeding against ITG.  While this argument may be persuasive against other creditors of Cone Mills, it must fail as to Chemtura, because ITG/Cone Mills failed to provide Chemtura with adequate notice of the Motion to Approve the Sale and cut off Chemtura's claim.

While the Bankruptcy Code affords the courts extraordinary power to cut off a creditor's claims, Constitutional Due Process and the Bankruptcy Rules require in exchange that adequate notice and service of the motion to effectuate a "free and clear" sale must be provided to a creditor such as Chemtura.  Absent adequate notice, all claims survive.  The notice

---

[1] On July 1, 2005, Crompton Corporation changed its name to Chemtura Corporation.

1

requirements with respect to large corporations such as Chemtura are minimal and non-burdensome, in that they require only that: (a) service of the motion and notice be addressed to the attention of an officer or an agent authorized to accept service; and (b) the motion and notice must reasonably inform the known creditor that its interests will be extinguished by the sale. As the case law makes clear, Constitutional Due Process and the Bankruptcy Rules impose these easily met obligations on a debtor in exchange for the "rare privilege" that the Bankruptcy Code affords to debtors and buyers in Section 363(f) asset sales of being able to fully and finally extinguish the rights and interests of creditors based upon mere service by mail, rather than by personal service as is required in virtually every non-bankruptcy context.

Here, ITG/Cone Mills admittedly disregarded and violated notice rule after notice rule with respect to Chemtura, and without any explanation or justification for doing so. Although many notices should have been provided to Chemtura -- either addressed to an officer, authorized agent or one of the several addressees known to Cone Mills who have knowledge of Chemtura's claims, the one and only notice (hereinafter the "Cure Amount notice") related to the bankruptcy that was ever provided to Chemtura was: (a) sent only to Chemtura's general mail room address, without reference to an officer or authorized agent of the company; (b) an inapplicable notice related primarily to the cure amount for the assumption of executory contracts -- even though Chemtura had no executory contracts with the debtor; and (c) failed to even disclose that the asset sale might be consummated free and clear of Chemtura's rights and interests. Even worse than the numerous notice and service failures, Cone Mills/ITG failed to ever serve Chemtura with the Motion to Approve the Sale. That failure was especially critical because only that Motion contained the required notice that Chemtura's claims were to be extinguished. Thus, no one with knowledge of Chemtura's claims against Cone Mills was ever

CHDATA 32694_1

provided with any notice; no one who received even the Cure Amount notice had any information that Chemtura's claims were to be extinguished.

Despite ITG/Cone Mills' notice failures, in a brief oral opinion from the bench, the Bankruptcy Court held that Chemtura was only entitled to the limited notice provided for in Rule 2002 which does not reference the Motion to Approve the Sale, and that the Cure Amount notice sent to no one in particular at Chemtura and which does not reference extinguishment of any of Chemtura's claims somehow satisfied Rule 2002. To reach this conclusion, the Bankruptcy Court provided a tortured analysis of the plain language of Rule 6004(c), which requires service of asset sale motions on a corporate officer or authorized agent where a creditor's interests will be cut off, and simply ignored Rule 6006, which directly applied to the Cure Amount notice and also requires such notice. Indeed, the Court ignored the basic Due Process requirements that Chemtura at least be told its claims were to be extinguished. The Court's ruling is plainly wrong, as it is inconsistent with the plain language of Rules 6004 and 6006, and well-settled precedent.

Moreover, even if the Bankruptcy Court were right, and service under Rule 2002 would be satisfactory in this case, the Cure Amount notice sent to Chemtura clearly fails to satisfy even Rule 2002, because it was not sent to anyone in particular. Indeed, this Court has held that when serving a large organization, service "not directed to anyone in particular fails to satisfy Bankruptcy Rule 2002." *In re G.S.T. Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745, *23-24 (D. Del. July 29, 2002) (Sleet, J.). (Attached hereto as Exhibit A). In holding that the Cure Amount notice in the present case satisfied Rule 2002, the Bankruptcy Court inexplicably ignored this binding precedent from this Court.

CHDATA 32694_1

## APPELLATE JURISDICTION

This Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).

## ISSUES PRESENTED

1.    Where Cone Mills specifically sought to extinguish Chemtura's rights and interests in property through a Section 363(f) asset sale, does Bankruptcy Rule 6004(c) require that notice must be served in accordance with Rules 9014 and 7004, which require at minimum that notice be addressed to an officer or authorized agent of the known creditor?

2.    Does the debtor Cone Mill's failure to comply with Rule 6006, which mandates particular means of service for notices to assume, reject, or assign executory contracts, preclude the debtor from extinguishing the claims of a known creditor, Chemtura, in a Bankruptcy Code § 363(f) asset sale where the only notice ever served on Chemtura with respect to the bankruptcy or the sale was a notice to assume, reject or assign executory contracts that did not comply with the service requirements of Rule 6006?

3.    Assuming that notice under Rule 2002 (a) can substitute for notice in compliance with Rule 6004 (c) or Rule 6006 for purposes of extinguishing Chemtura's rights and interests in property by way of a Section 363(f) asset sale, did Cone Mill's comply with Rule 2002 (a) and can those rights be extinguished consistent with Constitutional Due Process where:

(a)    the debtor and buyer specifically intended to extinguish the successor liability claims of Chemtura, a known creditor,

CHDATA 32694_1

(b)    the debtor failed to comply with any of its obligations to list Chemtura in the bankruptcy schedules or to serve the known creditor with, *inter alia*, the motion to approve the sale procedures, the motion to approve the sale, the order establishing the sale procedures, the proposed sale agreement, the sale order, or the plan disclosure statements;

(c)    the only notice of the bankruptcy ever sent to Chemtura was a notice to assume, reject, or assign executory contracts, even though Chemtura did not have an executory contract with the debtor;

(d)    the debtor and buyer possessed numerous addressees with knowledge of the known creditor's claims, but the notice was not sent to anyone in particular, nor directed to any officer or authorized agent of the known creditor. (*See In re GST Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745, at *23-24 (D. Del. July 29, 2002) ("courts have continuously held that when serving large agencies and businesses, service not directed to anyone in particular is not sufficient [under Rule 2002 (a)]" (citations omitted));

(e)    because of the failure to utilize any of the addressees possessed by the debtor and buyer, and because of the failure to otherwise direct service to an officer or authorized agent of the known creditor, the notice was never received by any person at Chemtura with any knowledge of the known creditor's claims; and,

(f)    the notice used did not put Chemtura on notice that any of its claims were at risk of being extinguished by the asset sale.

## STANDARD OF REVIEW

The issues presented are issues of law, and the standard of review is therefore plenary. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.

CHDATA 32694_1

1999); *Law offices of David A. Boone v. Derham-Burk*, 298 B.R. 392, 397 (9th Cir. 2003) (issues of proper procedure and due process are legal issues for *de novo* review).

The District Court's appellate responsibilities are further informed by the directive of the Court of Appeals, which effectively reviews bankruptcy opinions on a *de novo* basis. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002).

## STATEMENT OF THE CASE

This appeal addresses whether all successor liability claims of Chemtura Corporation ("Chemtura") can be extinguished by a Sale Order that was entered with regard to a sale of substantially all of the debtor's assets under Section 363(f) of the Bankruptcy Code, even though Chemtura was never served with the mandatory motion relating to the sale and was never notified that any of its rights or interests were even in jeopardy by such a sale.

Constitutional Due Process and the Bankruptcy Rules require that adequate notice and service of the motion to effectuate a "free and clear" sale, must be provided to a creditor such as Chemtura before such a sale can be used to extinguish the creditor's rights. Here, the appellees admittedly disregarded and violated notice rule after notice rule with respect to Chemtura. Although many notices should have been provided to Chemtura -- either addressed to an officer, agent or one of the several addressees Chemtura had provided to the debtor who had knowledge of Chemtura's claims -- the one and only notice related to the bankruptcy that was ever provided to Chemtura did not comply with the service/notice rules and was wholly inadequate in informing Chemtura that its claims could be extinguished.

6

## DISPOSITION BELOW

The Bankruptcy Court ruled that a single notice that the Court believed to be merely compliant with Rule 2002, as opposed to Rule 7004(b)(3), was by itself sufficient to extinguish a known creditor's interests. (*See* Exhibit 17, Hearing Tr. 46-47)[2], even though, as stated *In re Southwest Wood, Inc.,* 318 B.R. 739, 740-41 (Bankr. W.D. Okla. 2004), such a result effectively reads Rule 6004(c) and Rule 6006 right out of the rule book. In so holding, the Bankruptcy Court reasoned that notice under Rule 2002 was satisfactory even though the plain language of Rule 6004 (c) states that the more stringent notice of Rule 9014 and 7004 is necessary where, as here, the parties have "liens or other interests in the property to be sold." Moreover, in ruling that notice under Rule 2002 was satisfactory, the Court simply ignored the clear requirements for service under Rule 6006, where the notice being sent is to assume or reject an executory contract during a §363 asset sale.

Finally, the Court gave no explanation as to why it was ignoring binding precedent from this Court by holding that the Cure Amount Notice that was sent to no one in particular at Chemtura complied with Rule 2002. *See In re GST Telecom, Inc.,* 2002 U.S. Dist. LEXIS 18745 (Bankr. D. Del. July 29, 2002)

## STATEMENT OF RELEVANT FACTS

### A. Background on ITG.

ITG is the creation of W.L. Ross, a prominent Wall Street financier. Indeed, he has been dubbed by *Fortune Magazine* as the "King of Bankruptcy." W. L. Ross has developed a reputation of swooping down on distressed companies when those companies are either on the

---

[2] Exhibit Numbers referenced herein refer to the Item Numbers of documents designated on appeal by Appellants in their Amended Designation at Docket No. 3. By way of example, Exhibit 17 herein refers to Item No. 17 in Appellants' Amended Designation.

CHDATA 32694_1

verge of or are already in bankruptcy. He then uses the bankruptcy process to cut off the claims of the target company's creditors, giving them pennies on the dollar, and buying the target company's assets. Free of debt, the new companies formed by Mr. Ross once again become attractive to investors, and he is able to sell the newly formed company at a handsome profit. As the *Philadelphia Inquirer* reported in its Business Section on April 10, 2005, W. L. Ross was going to make a $229 million profit on the sale of steel companies he acquired through the bankruptcy process. Of course, more than 100,000 workers and retirees saw their pension and prescription benefits slashed as a result of these tactics. However, as Mr. Ross explained to the *Inquirer*, he believes he has done nothing wrong, because his tactics are permitted under bankruptcy law.

This case presents another example of W. L. Ross's efforts to employ such tactics, but here he has abused the very bankruptcy law upon which he justifies his actions. In this case, he has targeted distressed companies in the textile industry and acquired those companies only after almost all the debtor's liabilities have been cut off in bankruptcy. However, in this case, at least as to Chemtura, ITG and Cone Mills did do something wrong. They plainly violated the Bankruptcy Rules and Chemtura's Constitutional Due Process rights, by failing to notify a Chemtura official that its successor claim against ITG would be eliminated.

**B.  The Underlying Liability**.

Cone Mills owned and operated a manufacturing facility in Newark, New Jersey ("Newark Facility") for nearly fifty (50) years from the early 1930's until 1980. During that time, Cone Mills caused significant soil and groundwater contamination. In 1980, the Newark

CHDATA 32694_1

Facility was sold to a predecessor of Chemtura, who continued the operations at the Newark Facility from 1980 until 2000.

Shortly before closing operations in 2000, Chemtura began an investigation of environmental conditions at the Newark Facility to determine whether there had been a release of any hazardous substances. Based upon that investigation, Chemtura concluded that there had been a significant release of hazardous substances. As a result, Chemtura entered into a Memorandum of Agreement with the New Jersey Department of Environmental Protection for purposes of remediating contamination in soil and groundwater at the Newark Facility.

Since that time, Chemtura has been remediating conditions at the Newark Facility. To date, it has incurred $1,142,000 and the total cost of remediating conditions in the soil and groundwater at the site could ultimately approach $6 million.

Chemtura's investigation at the Newark Facility has uncovered that much of the contamination that exists in soil and groundwater must have been caused during Cone Mills' nearly fifty (50) years of operation there.

## C. Cone Mills and ITG Were Well Aware of Chemtura's Claims Before and During the Bankruptcy, and Well Aware of Proper Addressees.

Upon discovering the link between Cone Mills and the contamination in 2001, Chemtura and Cone Mills engaged in a lengthy series of communications with respect to Chemtura's written demand that Cone Mills participate in sharing in the cost of remediating the facility. (*See* attachments A through O to Exhibit 9). Several of these direct communications were handled personally by Neil W. Koonce, Esquire -- the Vice President and General Counsel of Cone Mills. Indeed, as Mr. Koonce states in his affidavit to the Bankruptcy Court in support of ITG' s motion for preliminary injunctive relief, he was the General Counsel of the Debtors at

CHDATA 32694_1

the time of the bankruptcy petition filing and throughout the approval of the asset sale Order; immediately thereafter he became the General Counsel for Cone Mills, LLC – which Chemtura contends is the successor to Debtors; and immediately thereafter became General Counsel for ITG. (*See* Exhibit 7 ¶¶ 1 and 2).

      Others of these communications were handled by outside special environmental counsel, who was engaged by Cone Mills specifically because of Chemtura's claims.  Still others were handled by Cone Mills' Environmental Manager.  Clearly, these claims were not only known, they were taken very seriously.

      From these communications, Cone Mills had the addressees of the persons on behalf of Chemtura who had direct knowledge and understanding of Chemtura's claims.  Several communications were from Pamela Missal, Esquire, in-house Senior Environmental Counsel for Chemtura.  (*See* attachment A to Exhibit 9).  Another was from outside environmental counsel for Chemtura, John Armstrong, Esquire, of Schnader Harrison Segal & Lewis, LLP, who wrote directly to Mr. Koonce and reiterated that Cone Mills was strictly liable, among other bases, under CERCLA and New Jersey statutory and common law.  (*See* attachment E to Exhibit 9). (Cone Mills thereafter itself retained "special environmental counsel" from Porzio, Bromberg & Newman, P.C. to address Chemtura's claims.  (Porzio letter to Mr. Armstrong (February 6, 2002).  (*See* attachments I through O to Exhibit 9).

      Other communications continued from Chemtura's Manager of Environmental remediation, Mr. Mark Pettegrew, continuing up until a few months before the bankruptcy was filed.  (*See* attachment P to Exhibit 9 at ¶ 9).  Cone Mills was sufficiently concerned about Chemtura's claims that it sent its Environmental Manager, Mr. Arthur Toompas, to oversee the tank removal during the week of September 16, 2002.  (*Id*).  Moreover, Cone Mills also had the

CHDATA 32694_1

proper address for the agent authorized to receive any notices relating to Cone Mills sale of the Site to Chemtura. (*See* attachment V to Exhibit 9 at 20).

Thus, Cone Mill's had been provided four different specific addressees with whom to communicate with respect to Chemtura's claims: in-house environmental counsel; outside environmental counsel; the Environmental Manager; and an authorized agent.

Cone Mills/ITG focused on eliminating any liability for Chemtura's specific claims during the bankruptcy. Chemtura's claims, **and how to avoid liability for those claims passing to the Buyers through successor liability**, were specifically discussed **during the course of the bankruptcy** on several occasions. (Koonce Letter to Rosenberg, August 19, 2004, (*See* attachment Q to Exhibit 9) (referring to "several discussions related to this [Chemtura] Site during the course of the bankruptcy in order to ensure no liability was assumed by WLR")).

Chemtura's claims were also specifically and fully disclosed to the Buyers during the sale negotiations. Chemtura's claims are listed on the schedules attached to the Sale Agreement in two separate places. Chemtura's claims are identified as "Litigation" matters, and also as "Environmental" matters. (*See* attachment R to Exhibit 9 at Schedules 2.09 and 2.12).

Indeed, the Debtor declared in the hearing below that the Buyers were "fully" aware of these claims, and had access to all the related documents -- including the service lists **prior to filing** to **"make sure it included all known or suspected creditors."** (*See* Exhibit 16 at ¶¶ 7, 36 (emphasis added)).

The Debtors' 30(b)(6) witness with respect to the notice issues testified that the Buyers conducted due diligence with respect to the asset sale, had even engaged an outside firm to assist them in that regard, and **that Chemtura's claims were specified to the Buyers**

11

because the Buyers would have wanted "to understand what potential claims were out there." (*See* attachment X to Exhibit 9). (D'Appolonia Tr., at 15-45, 23, 61 [19-25] - 62 [1-3]).

Further, under the Cone Mills/Buyers Sale Agreement, the Buyers received copies of all proposed filings and service lists for review and possible supplementation before they were filed by the Debtors (*See* attachment V to Exhibit 9, at 22, 5.01(b)); and the Buyers had the right to demand any information they wanted from the Debtors with respect to Chemtura's claims (*Id.* at 21, 4.0.7).

Thus, Chemtura was a known creditor to both Cone Mills and to the Buyers; and Chemtura had provided Cone Mills with numerous addressees who were knowledgeable about Chemtura's claims.

**D.  The Disregard of Mandatory Bankruptcy Notice Requirements.**

In September 2003, Cone Mills filed the Chapter 11 petition.

Chemtura was not listed as a creditor entitled to receive notice.  Cone Mills' 30(b)(6) witness admitted that Chemtura should have been listed on the bankruptcy schedules at the outset of the bankruptcy; that the claims represented "known litigation cases, known or threatened;" and that they were claims known at the time of the asset sale.  (*See* attachment W to Exhibit 9, at 20 [12-17], 59 [2-5]).

Chemtura was not served with the Motion to Approve Sale of Substantially All Assets.

Chemtura was not served with the Order Establishing Sales Procedures.

Chemtura was not served with written notice of the Bar date.

Chemtura was not served with the Auction and Sale Notice.

Chemtura was not served with the Sale Procedure Order.

CHDATA 32694_1