Chemtura was not served with the Notice of Filing of Asset Purchase Agreement.

Chemtura was not served with the proposed Sale Agreement.

Chemtura was not served with the Motion to Approve the Sale.

Chemtura was not served with the approved Sale Order.

Chemtura was not served with the proposed Plan Disclosure Statement.

Chemtura was not served with the Order Approving the Disclosure Statement.

Mr. Koonce, General Counsel for Cone Mills during the bankruptcy and General Counsel for ITG now, could not provide any explanation whatsoever for any of the notice failures. (*See* attachment V to Exhibit 9, at 102-03).

Mr. D'Appolonia, the person identified by Mr. Koonce as one of the "bankruptcy professionals" upon whom he relied during the bankruptcy with respect to notice issues, and the debtor's 30(b)(6) witness on all notice issues relating to this adversary proceeding, was also unable to offer any explanation or understanding whatsoever for any of the notice failures. He had no explanation for failing to utilize any of the known persons with knowledge of Chemtura's claims as addressees on the Cure Amount Notice; and no explanation for not serving Chemtura with any of the other bankruptcy motions or notices thereafter. (*See* attachment W to Exhibit 9, at 38-40, 42-47, 50, 53-55).

### E. The Cure Amount Notice.

During discovery in preparation for the bankruptcy hearing, it was discovered for the first time that one piece of paper relating to the bankruptcy had been sent by Cone Mills/ITG

to Chemtura. This paper was the Cure Amount notice, as identified in Cone Mills/ITG's Motion to Approve Sale Procedures. (*See* attachment X to Exhibit 9).[2]

The Cure Amount notice related primarily to the assumption of executory contracts, and the amount of "cure" that would be provided as part of the asset Sale. (*Id.*) However, this notice did not apply to Chemtura, because Chemtura did not have any executory contracts with Cone Mills. Most important for purposes of this Appeal -- the Cure Amount notice does not inform any recipient that claims relating to any of the assets being sold or successor liability claims such as Chemtura's would be at all affected by the sale. (*Id.*)

The Cure Amount notice was also not served in accordance with the Bankruptcy Rule requirements that service for such notices to a corporation must be made to the attention of an officer, a managing or general agent, or to others authorized by appointment or law to accept service. *Rule 7004(b)(3)*, incorporated by *Rules 6004(c)* and *6006*. Instead, even though Chemtura had provided the debtor with numerous proper addressees to whom information about its claims should be routed, the Cure Amount notice was sent to **no one in particular.** It was addressed merely: "Crompton Corporation, Benson Road, Middlebury, CT 06749." (*Id.*)

**F. Because Of Invalid Service, and Failure to Utilize the Provided Addressees, The Cure Amount Notice Was Placed In An Inactive "Dead" File.**

This case presents a "text book" example of why the Rules require that the motion and notice be sent to the attention of an "officer . . . or an agent authorized by appointment or by law to receive service of process." Chemtura is a very large

---

[2] Oddly, prior to that discovery, the Debtor and ITG were completely unaware that Chemtura had been served with anything. Each contended until this discovery that no written notice of any kind had ever been provided to Chemtura, and they relied solely upon alleged publication.

organization with over 5,000 employees. As a result, it receives hundreds of bankruptcy notices that are often deemed unworthy of a response. (*See* attachment Y to Exhibit 9; O'Neil Tr. at 40 [10-18]).

As implicitly recognized in the Rules, how a bankruptcy notice is handled at Chemtura (or any large corporation) depends on how it is served. When the mail room receives a notice that is directed to a specific officer or agent, then the notice is sent to that specific officer or agent, and from there to the legal department. (*Id.* at 27 [19-21]). If the notice is sent to the attention of the legal department or someone in the legal department, then it is sent to the legal department. (*Id.* at 58 [5-17]).

However, if the notice is simply addressed to Chemtura Corporation, then it is forwarded to the credit department at Chemtura. (*Id.* at 27 [2-3].) Indeed, the only bankruptcy notices that go directly to the credit department are those notices that are simply addressed to Chemtura Corporation. (*Id.*) All other notices are ultimately directed to the legal department. (*Id.* at 66 [14-16]).

Bankruptcy papers are handled differently in Chemtura's legal department, as compared with the credit department. If received in the legal department, it would be checked against the legal department's database and, if there were an open matter, it would be directed to the professional in charge in that matter. (*Id.* at 10 [2-7]).

Further, the legal department database would identify the attorney with knowledge of the matter and the notice would be directed to that attorney. (*Id.* at 54 [16-23]; *See* attachment Z to Exhibit 9 Missal Tr., at 59-60 [24-1]). Had the notice been properly served here, it would therefore have been directed to Pamela Missal, the attorney who had been

communicating with Cone Mills about Chemtura's claims. (*See* attachment Y to Exhibit 9, at 21 [6-10]).

However, because of the invalid method of service, the Cure Amount Notice was signed for by a security guard and sent directly to the credit department, which would check for open accounts receivables. Because Cone Mills and Chemtura had not had a business relationship for years, the credit department's database on accounts receivables had no information on Cone Mills. Thereafter, it was placed in the inactive, "dead" file. (*See* attachment Y to Exhibit 9, O'Neil Tr. at 31[11-18]).

### G. The Cure Amount Notice Fails To Warn Chemtura That Its Claims May Be Extinguished.

The Cure Amount notice itself fails to include any relevant information as to Chemtura's claims and **fails to warn Chemtura that its claims will be extinguished**. The Cure Amount notice **does not provide any of the terms or conditions of the proposed sale**, other than as to executory contracts and leases, which did not relate to Chemtura. (*See* attachment X to Exhibit 9). This is clearly an erroneous filing.

### H. Cone Mills/ITG Failed to Serve Chemtura With the Sale Motion.

Even after determining the need to provide Chemtura with *some* sort of notice (when it sent but failed to properly serve the Cure Amount Notice on November 26, 2003), Cone Mills and ITG continued to violate their service obligations by failing to serve Chemtura with the critical Motion to Approve the Sale, which they filed and served on other known creditors on January 6, 2004. The Bankruptcy Rules plainly required Cone Mills to serve the Motion pursuant to Rule 7004(b) (3) on all creditors whose interests could be affected by the sale. Yet no service was ever provided to Chemtura. When asked to provide an explanation for this

blatant violation of the Court Rules, both Mr. Koonce and Mr. D'Appolonia (the Cone Mills' 30(b)(6) witness) simply stated that they did not have an explanation. (*See* attachment W to Exhibit 9, D'Appolonia Tr. at 43 [11-18]).

The failure to serve the required Motion was especially critical, because -- unlike the Cure Amount notice -- the Motion did set forth the terms of the sale and specified that successor liability claims like Chemtura's were to be extinguished. Because Cone Mills/ITG failed to serve the Motion, this critical information was hidden from Chemtura until late November, 2004.

## ARGUMENT

### A. Proper Notice is Constitutionally Required.

Proper notice is the bedrock of bankruptcy procedures. Absent proper notice, pre-petition claims will not be barred from proceeding in other courts. *In re Illeg Indus., Inc.*, 2004 Bankr. LEXIS 1577, *89 (Bankr. N.D. Kansas, 2004) (citing 10th Circuit, 3rd Circuit and 5th Circuit cases). The law is clear that § 363(f) sale orders that purport to bar successor liability claims do not bar any such claims of any known creditor that did not receive adequate formal written notice.

As stated in *Collier*, bankruptcy sales "will not, however, protect a party buying from the trustee in a sale free and clear of liens where no notice is given to the lienholder and **such a purchaser will be held to have purchased subject to the lien.**" *Id.* at 721 (quoting 2

Lawrence P. King, *Collier on Bankruptcy*, ¶ 363.13, at 363-43 (15th Ed. 1992) (emphasis added)).[3]

The *Illeg Indus.* Court held that the bankruptcy court could not enforce, **and had no jurisdiction to enforce** the sale order against an inadequately notified creditor, and explained that buyers and debtors can very easily protect themselves from such results.

> Participants in chapter 11 all-asset sales – **parties and bidders alike** – can avoid this jurisdictional "no mans land" by ensuring compliance with Code notice requirements to "parties in interests."

*Id.* at 722.[4]

It is well-settled in the Third Circuit and other jurisdictions that actual notice cannot substitute for the formal notice required under the Code. *In re Trans World Airlines*, 96 F.3d 687, 690 (3d Cir. 1996); *In re Unioil*, 948 F.2d 678, 683-84 (10th Cir. 1991) (quoting *New York v. New York, New Haven & Hartford R.R. Co.*, 344, U.S. 293, 297 (1953)). See also *In re LaRouche Indus, Inc.*, 307 B.R. 774, 781 (D. Del. 2004); *In re Carematrix Corp.*, 306 B.R. 478, 486 (Bankr. D. Del. 2004).

**B.     The Notice Failures Here Violated the Bankruptcy Rules and Due Process.**

**1. The Bankruptcy Court Incorrectly Interpreted Rule 6004(c).**

If a Debtor and Buyer of the Debtor's assets intend to extinguish the rights and interests

---

[3] See also *In re Richard Allen Parish, Sr.*, 171 B.R. 138, 140 (Bankr. M.D. Fla. 1994)(buyer takes subject to claims, absent proper notice to creditor); *In re Anthony Cutaia*, 206 B.R. 250, 251-252 (Bankr. S.D. Fla. 1997) (same).

[4] The First Circuit rejected an argument that failing to discharge claims would "chill" Chapter 11 asset bidding, finding such concerns to be "largely illusory," because the failure to provide notice was completely in the control of the debtor and the buyer, who should not have arranged a sale without regard to basic Bankruptcy Code notice requirements. *Id.*

of creditors by way of an asset sale, they must proceed by motion and comply with Rule 6004(c). Lawrence P. King, *Collier on Bankruptcy*, ¶ 6004.04[1] (18th Ed. Rev. 2004).

However, the Bankruptcy Court held that Rule 6004(c) only required service pursuant to Rule 2002, even though Rule 6004(c) plainly states in part, "a motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 . . . ." (which, as is explained below, imposes much more stringent service requirements on an officer or authorized agent of a creditor). The Bankruptcy Court's ruling rendered the aforementioned phrase in Rule 6004(c) meaningless.

When that point was raised with the Bankruptcy Court at the hearing in this matter, the Bankruptcy Court responded by stating that the next sentence of Rule 6004(c), which states in part, "the notice required by subdivision (a), [which is notice pursuant to Rule 2002] of this rule shall include . . . . ." would be rendered meaningless if Chemtura's interpretation were followed. Implicitly accepting the Rule's ambiguity, the Bankruptcy Court decided to follow the second sentence of Rule 6004(c), and render the first sentence at least as to service - - meaningless. (*See* Exhibit 17, Hearing Transcript at 28 [2-25]).

The Bankruptcy Court is wrong. In fact, the correct reading of the Rule does not require that either of the sentences be disregarded. Instead, the Rule simply requires that only those creditors who are going to have their "liens or other interests" cut off by the sale receive notice under Rule 9014, while those creditors whose interests will not be cut off receive notice under Rule 2002.

A more detailed analysis of Rule 6004 and its interplay with Section 363 of the Code may be helpful in showing why *Collier on Bankruptcy* is correct, and the Bankruptcy Court is wrong.

(i.) <u>The Relationship Between Section 363 and Rule 6004.</u>

Rule 6004 must be read in conjunction with Section 363 of the Code. 11 U.S.C. §363. Section 363 is the statutory provision that allows Bankruptcy Courts to sell assets, and in certain cases, to sell assets free and clear of liens and other interests. It states in relevant part:

> (f) The Trustee may sell property under subsection (b) or (c) of this section *free and clear of any interest in such property* of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable Proceeding, to accept a money satisfaction of such interest.

*Id.* (Emphasis added).

Rule 6004 provides the mechanics that must be used when a debtor wants to have a court approve the sale of assets under Section 363 and in certain cases also cut off a creditor's liens or interests in those assets. Rule 6004 covers sales that are **not** free and clear of liens and other interests (subdivision (a)) as well as special sales that will actually discharge a creditor's liens or other interests (subdivision (c)).

Rule 6004 states in pertinent part:

> **(a)** *Notice of proposed use, sale, or lease of property.* Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the *ordinary course of business shall be given pursuant to Rule 2002(a)(2),* (c)(1), (i) and (k) and, if applicable, in accordance with §363(b)(2) of the Code.
>
> **(c)** *Sale free and clear of liens and other interests.* A motion for authority to *sell property free and clear of liens or other interests*

> *shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold.* The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

*Id.* (emphasis added).

In other words, in cases where the assets are being sold, but liens and other interests are not being cut off, then service under Rule 2002 is satisfactory. However, if the assets are going to be sold free and clear of liens and interests, then those creditors whose liens or interests are going to be affected must be provided with the more careful notice required by Rule 9014, while Rule 2002 notice is still satisfactory to those creditors whose liens or interests would not be affected by the asset sale, but modified to include the hearing date.

(ii.) <u>Courts are split on the term "other interest in such property" in Section 363.</u>

There has been a split among Courts as to the meaning of the phrase "free and clear of any interest in such property" contained in Section 363. Some Courts argue that since Congress used the word "interest" instead of the more broadly defined word "claim," it must have been placing a limit on the types of interests that could be cut off by the Court during an asset sale pursuant to Section 363. These courts reason that Congress must have intended for the phrase free and clear of any "interest in such property" to be referring only to *in rem* interests in the property. *See, e.g., In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Under this approach, if a debtor tries to sell assets free and clear of "interest in such property", then Rule 6004(c) would require the more stringent service contained in Rule 9014 only on those creditors with an *in rem* interest in the assets, because they would be the only creditors whose interests could be cut off by the asset sale. Pursuant to Rule 6004(c), all other

creditors could still receive notice under Rule 2002, although that notice would now have to show the date of the hearing and when objections must be filed. Therefore, under this approach, there is no need to disregard either sentence of Rule 6004(c) as they compliment each other.[5]

Other courts, however, including the Third Circuit, now define the term "interest in such property" much more broadly. *See, e.g., In re: Trans World Airlines, Inc.*, 322 F.3d. 283 (3d Cir. 2003). In *Trans World Airlines*, the Third Circuit explained that, "Congress did not expressly indicate that by employing such language, it intended to limit the scope of Section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here." *Id.* at 289. The Court went on to further explain "to equate interest in property with only *in rem* interests such as liens would be inconsistent with Section 363(f)(3), which contemplates that a lien is but one type of interest." *Id.* at 290. Accordingly, the *Trans World Airlines* Court held that indirect interests in the assets being sold could also be cut off through a Section 363(f) sale. This new reading still does not require that either sentence in Rule 6004(c) need be modified.

> (iii.) This New Reading still does not Require that Either Sentences of Rule 6004(c) need be Nullified.

Even under the *Trans World Airlines* approach, there will be numerous situations where only certain creditors would receive notice under Rule 9014, while others would receive notice under Rule 2002, based on the plain language of Rule 6004(c). For example, there may be creditors who are fully secured through other assets not subject to the sale. Because their rights

---

[5] Of course, if this Court followed this approach, then the Bankruptcy Court would not have had the authority under Section 363 to cut off Chemtura's interest, because Chemtura's interest in Cone Mills was not an *in rem* interest.

and interests would not be placed in any jeopardy by the sale, it would be appropriate to provide them only with Rule 2002 notice. Similarly, the debtor and asset purchaser on their own may only seek to cut off certain creditors' rights during the asset sale, in which case notice pursuant to Rule 2002 on other non-effected creditors would be satisfactory under Rule 6004(c).

The bottom line is that under either approach, those creditors whose rights are to be extinguished by the sale must receive service of the motion and service must be directed to a corporate officer or authorized agent. This is the only Rule that comports with fundamental concepts of Due Process.

2. **ITG/Cone Mills Failure to Comply with Rule 6004(c) and Serve Chemtura in Compliance with Rule 9014 Means that the Sale Order Does not Apply to Chemtura.**

Rule 6004(c) requires that the motion and notice relating to a sale of property that will extinguish a known creditor's interests must be made in accordance with Rule 9014. In turn, Rule 9014 mandates that service must be effected in compliance with Rule 7004. *Rule 9014.* Rule 7004 mandates that mailed service to a corporation will only be effective if it is sent "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process ..." *Rule 7004 (b)(3).* The pre-eminent scholarly treatise on Bankruptcy matters, Lawrence P. King, *Collier on Bankruptcy* (15th Ed. Rev. 2004) could not be more clear:

> **[1] Actual Notice by Mail.**
>
> **Service on parties with an interest in property to be sold free and clear of liens under Rule 6004(c) must be made in the manner provided under Rule 7004**, as required by Rule 9014. Rule 7004(b) allows service by mail in most cases. Under Rule 7004(b) (3), service upon corporations or partnerships **must be**

> **made to the attention of an officer or agent, authorized by appointment or by law to receive service of process.**

*Id.* ¶ 6004.04[1] (emphasis added).

This mandatory requirement to serve an officer or agent has long been understood by the Courts as: (a) very easy for parties to comply with; and (b) requiring strict compliance. As stated in *In Re Lancaster*, 2003 Bankr. LEXIS 11 (Bankr. D. Idaho 2003):

> When so much of the daily diet of bankruptcy practice is handled by 'notice and hearing' under § 102(1) and on the non-appearance or non-objection of a party who has been provided an opportunity to appear or object, it is appropriate that both the Court and counsel for the proponent pay heed to the requirements of proper service . . . the special and "comparatively lenient' procedure of service by mail in bankruptcy cases requires parties to strictly comply with Rule 7004, **thus protecting due process rights** . . . .

*Id.* at *8 (emphasis added).

Accordingly, the law is virtually uniform that the failure to comply with this minimal service requirement precludes the extinguishment of a known creditor's rights. Any order or ruling that results from the proceeding to which the improperly served notice applied has no effect on any rights of those creditors who were not properly served. An invalidly served bankruptcy notice cannot constitutionally support a deprivation of rights. *E.g., In re Main*, 157 B.R. 786, 790 (W.D. Pa. 1992).

One of the seminal cases on this issue is *In re Schoon*, 153 B.R. 48 (Bankr. N.D. Cal. 1993). There, the Court explained:

> Nationwide Service of Process by mail is a rare privilege … as a privilege, it is not to be abused or taken lightly … it seems like a small burden to require literal compliance with the rule … .

> Allowing service [inconsistent with strict compliance] makes a joke of the requirement that an officer be served; it takes no more work, just an additional line on the envelope.

*Id.* at 49.

Therefore, Cone Mills/ITG was required to serve Chemtura with the Motion to Approve the Sale and to comply with Rule 7004(b)(3) service mandates. Cone Mills/ITG failed in both regards, and has no explanation for either failure.

The failure to proceed by properly noticed motion bars a debtor and its buyer from shielding themselves from a creditor's existing claims and interests. Thus, even if a creditor is served with *notice* of the proposed sale, the sale will not be effective to extinguish the creditor's claims unless the creditor is also served with the Motion itself. Indeed, to do otherwise would "effectively remove *Rule 6004(c)* from the rule book." *In re Southwest Wood, Inc.*, 318 B.R. 739, 740-41 (Bankr. W.D. Okla. 2004).

> As explained in *Southwest Wood*,
>
> Rule 6004(c) is absolute and leaves no room for any judicial discretion to circumvent its mandate. When it says that the motion must be 'served on the parties who have liens or other interests in the property to be sold' that is what is required.

*Id.* at 741. There, the Court held that the debtor's and buyer's failure to serve the creditor with the motion was a "fundamental violation of the clear mandate of the rule." *Id.* Therefore, the sale was not effective to extinguish claims or interests of the creditor, who may have been served with proper notice, but who had not been served with the Motion. *Id.*

The exact same conclusion was reached in *In re Winchells, Inc.*, 106 B.R. 384 (Bankr. E.D. Pa. 1989). There, the creditor had been served with notice that was ostensibly proper under Rule 2002, but had not been served with the Motion. That Court explained that

Rule 6004(c) clarified that the service provisions of Rules 9014 and 7004 applied when property was to be sold free and clear of a creditor's interests, and that a debtor could sell property free and clear of such interests --

> **only** by complying with the applicable notice requirements of Rule 7004, and can effectively conclude the sale or transfer free and clear of any liens and encumbrances of all parties **only** when they are properly notified [in accordance with Rule 7004] and given an opportunity to object to the proposed sale. . . . Respondents failure to comply with the service requirements found in Bankr. R. 6004 (c) . . . **cannot be overlooked**.

*Id.* at 394-95 (emphasis added).

Thus both *Collier* and the case law agree: a known creditor's rights cannot be extinguished by way of an asset sale unless the debtor serves the creditor whose rights are at issue with a copy of the Motion. Because Cone Mills/ITG made no effort to comply with this obligation, the resulting Order cannot, procedurally or constitutionally, bar Chemtura's successor liability claims.

### 3. The Need to Serve Notice in Compliance with Rule 9014 is Buttressed by Rule 6006.

The Cure Amount notice is on its face a notice of Assumption, Rejection or Assignment of an Executory Contract or Unexpired Lease. Such notices are specifically and expressly governed by Bankruptcy Rule 6006. *See Rule 6006, "Assumption, Rejection or Assignment of an Executory Contract or Unexpired Lease;" see also, In re: Joshua Slocum, Ltd.*, 99 B.F. 262, n.5 (Bankr. E.D. Pa. 1989) (notices regarding assumption or sale of executory contracts or leases must comport with service requirements of Rule 6006, **not Rule 6004**).

Like Rule 6004 (c), Rule 6006 imposes a mandatory obligation to proceed under such notices in accordance with Rule 9014, which in turn incorporates Rule 7004. *Rule 6006*

*(a)*. Thus, notices such as the Cure Amount notice must be served upon an "officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process ..." *Rule 7004 (b) (3)*.

Therefore, if ITG/Cone Mills had at least complied with the Bankruptcy Rules when it served the Cure Amount notice, that notice would have reached someone at Chemtura - - such as Pam Missal - - who would have realized the potential significance of Cone Mills' bankruptcy to Chemtura.

The fact that the Bankruptcy Rules required that the Cure Amount notice be served in compliance with Rule 6006 was pointed out to the Bankruptcy Court in both submissions to the Court and at the hearing. (*See* Exhibit 17, Hearing Transcript at 30 [12-25] & 31 [1-7]). Nevertheless, the Bankruptcy Court held that service of the Cure Amount notice in compliance with Rule 2002 was satisfactory. In so holding, the Bankruptcy Court simply ignored the fact that (1) Rule 6006 plainly applied to the Cure Amount notice; and (2) that Rule 6006 makes no mention of Rule 2002, and instead, unambiguously and exclusively requires service in compliance with Rule 9014.

### 4. The Cure Amount Notice Was Not Served in Accordance with Rule 2002.

Even if the Motion *had* not been required, and even if the Cure Amount notice *had* disclosed the pertinent terms of the sale, and even if Rule 6006 and 6004(c) *did not* mandate compliance with Rule 7004, the undirected, non-specified service to Chemtura's mailroom here is equally deficient under Rule 2002.

As the Court held:

> Courts have continually held that that when serving large agencies and businesses, service not directed to the attention of anybody in particular is not sufficient. . . . [T]he debtor's attempted service was not directed to the attention of anyone in particular, and is therefore insufficient under Bankruptcy Rule 2002.

*In re GST Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745, *23-24 (D. Del. 2002). In *GST*, the debtor had sent the notice to the proper address of the creditor corporation's general mail room, but had failed to add routing information that would have directed the notice thereafter to a department with knowledge of the claims at issue. Because of the failure to include the routing information, and the failure to at least direct it to the attention of an officer or agent, the notice was ineffective and could not be used to extinguish the creditor's rights. *Id.* The reasoning is sound: large corporations whose rights are to be extinguished have a right at least to service directed to an officer or authorized agent (like any complaint in every other type of case) and adding the words "President" or "Officer" to an envelope places no burden on the debtor.

In accord with that ruling and analysis, in *In re Main*, 157 B.R. 786 (W.D. Pa. 1992), the Court also held that notice sent to a creditor's mailroom, and not addressed to anyone in particular, did not constitute notice at all -- formal or even so-called "actual notice." Because of the lack of any specific addressee, the Court affirmed the Bankruptcy Court's holding that:

> Even if [the creditor] did receive it [the notice] (as it presumably did), the notice was not adequate to reasonably apprise it of the bankruptcy proceedings so as to afford it the opportunity to object in a timely manner to the discharge of Debtors and their debts.

*Id.* at 788.

> It is reasonable to expect that [the creditor], upon receipt of the notice in its mailroom, would not have been able to determine the person within the corporation to whom a notice should have been forwarded in order to ensure what action, if necessary, should be taken with regard to the notice. Under these circumstances, it must be concluded that [the creditor] did not receive notice reasonably

> calculated to apprise it of debtor's bankruptcy so as to permit it to file its complaint in a timely manner. The notice received by [the creditor] was not acted upon in a timely manner because [the creditor] was unable to determine, in light of the manner in which it was addressed, what interest the [creditor] had in the bankruptcy proceedings.

*Id.* at 790. The Court therefore affirmed the conclusion that **"an inadequately addressed notice [i.e., not addressed to an officer] could not reasonably apprise a large and complex institution of its right in a bankruptcy proceeding."** *Id.* (emphasis added).

Therefore, because Chemtura is a large corporation, Cone Mills/ITG's service "not directed to the attention of anybody in particular is not sufficient," even under Rule 2002.

Indeed, the well reasoned rule that such non-specific bankruptcy notices cannot be "reasonable under the circumstances," and are therefore constitutionally deficient, is especially applicable to circumstances in which the debtor seeking to effectuate service and extinguish another's rights refused to utilize the creditor's addressees, or routing information, that are both known to the debtor and who are likely to understand the significance of the notice. *E.g.*, *GST*; *In re Faden*, 96 F.3d 792, 795-96 (5th Cir. 1996).

Rule 2002 itself obligates the debtor to utilize either the address the debtor used on the schedule of creditors that the debtor is obligated to provide to the bankruptcy court so that the court can send regular notices to the creditor, or, if the creditor responds after receiving notice from the Court because of its being listed on the schedule, the debtor must then use the address supplied by the creditor itself. *Rule 2002.*

Here, Cone Mills violated all of the bankruptcy rules with regard to placing Chemtura on the initial schedule, even though it clearly knew of Chemtura's environmental "litigations" (as listed on the sale schedules and given Cone Mills' admitted ongoing discussions

about how to avoid these claims). Because of Cone Mills' violation, Chemtura was not provided with any of the numerous notices sent out by the Court with respect to the bankruptcy and was deprived by Cone Mills of its rightful opportunity to provide a particular addressee for service. Under these circumstances, Cone Mills was obligated to at least utilize the addresses that Chemtura had previously provided and who Cone Mills knew had knowledge of the claims at issue.

Yet, when confronted at the hearing with this precedent from the District Court of Delaware in the *GST* case, the Bankruptcy Court provided no explanation as to how the Cure Amount notice - - addressed to no one in particular at Chemtura - - complied with the service requirements of Rule 2002. (*See* Exhibit 17, Hearing Transcript at 33 – 36).

## CONCLUSION

For all of the above reasons, the Bankruptcy Court's Order should be reversed as to Chemtura. This Court should declare that the asset sale Order has no application to Chemtura or to Chemtura's successor liability claims.

Respectfully submitted,

DATED: October 31, 2005

_____
Bradford J. Sandler, Esquire (No. 4142)
ALDELMAN LAVINE GOLD AND LEVIN
A Professional Corporation
919 N. Market Street, Suite 710
Wilmington, Delaware 19801
Tel: 302-654-8200
Fax: 302-654-8217

- and –

SCHNADER HARRISON SEGAL & LEWIS LLP
A Professional Corporation
JOHN M. ARMSTRONG
RICHARD A. BARKASY
JERRY L. TANENBAUM
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Tel: 856-482-5222
Fax: 856-482-6980

*Co-Counsel for Chemtura Corporation*