# EXHIBIT B

LEXSEE 2004 BANKR LEXIS 1577

In Re: ILLIG INDUSTRIES, INC., DEBTOR. DAVID SEITTER, Trustee, PLAINTIFF, V. GUILFORD MILLS, INC., DEFENDANT. In Re: EXCEL LAMINATES, INC., DEBTOR. DAVID SEITTER, Trustee, PLAINTIFF, V. GUILFORD MILLS, INC., DEFENDANT.

CASE NO. 01-20-189, CHAPTER 7, ADV. NO. 03-6015, CASE NO. 01-20190-7, CHAPTER 7, ADV. NO. 03-6033

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF KANSAS

2004 Bankr. LEXIS 1577

May 17, 2004, Decided
May 17, 2004, Filed

**SUBSEQUENT HISTORY:** On reconsideration by, Motion denied by *Seitter v. Guilford Mills, Inc. (In re Illig Indus.)*, 2004 Bankr. LEXIS 1351 (Bankr. D. Kan., June 8, 2004)

**DISPOSITION:** [*1] Defendant's motion to stay denied. Guilford Mills ordered to withdraw motion to enforce filed in other court.

**LexisNexis(R) Headnotes**

**COUNSEL:** For David C Seitter, Chapter 7 Trustee, Plaintiff: Eric L. Johnson, Kansas City, MO.

For Guilford Mills, Inc., Defendant: Charles Hays, Registered Agent, Greensboro, NC. Laurence M. Frazen, Bryan Cave LLP, Kansas City, MO. Michelle M. Masoner, Bryan Cave, LLP, Kansas City, MO. Nancy S. Jochens, Blackwell Sanders Peper Martin, Kansas City, MO.

**JUDGES:** DALE L. SOMERS, BANKRUPTCY JUDGE.

**OPINIONBY:** DALE L. SOMERS

**OPINION:**

ORDER (1) DENYING MOTIONS BY DEFENDANT GUILFORD MILLS, INC., TO STAY PROCEEDINGS, AND (2) DIRECTING GUILFORD MILLS TO WITHDRAW THE MOTION IT HAS FILED IN NEW YORK TO ENFORCE THE ORDER THAT CONFIRMED ITS PLAN OF REORGANIZATION

These proceedings are before the Court on identical motions filed by defendant Guilford Mills, Inc. ("Guilford"), in each case. Guilford appears by counsel Nancy S. Jochens of Blackwell Sanders Peper Martin LLP. Plaintiff Carl R. Clark, successor trustee to David C. Seitter, appears by counsel Scott Goldstein and Eric L. Johnson of Spencer Fane Britt & Browne LLP. The Court reviewed [*2] the relevant materials and held a hearing on the motions on May 13, 2004. The Court has reviewed the applicable pleadings, considered the parties' arguments, and is now ready to rule.

FACTS

The relevant facts are not in dispute. Debtors Illig Industries, Inc. ("Illig"), and Excel Laminates, Inc. ("Excel"), filed Chapter 7 bankruptcy petitions on January 24, 2001, in Kansas City, Kansas. David C. Seitter was originally appointed as the trustee for both cases, but later resigned and was replaced by Carl R. Clark. The change in trustee has not changed the bankruptcy estates' positions in these proceedings and has no impact on this decision, so the Court will simply use "the Trustee" to refer to whichever trustee was serving at the time the relevant events took place.

The Trustee contends that Illig paid Guilford about $20,000 during the 90 days before Illig filed for bankruptcy, and that the payments constitute preferences that he can avoid under § 547(b) of the Bankruptcy Code. He contends that Excel paid Guilford about $1.6 million during the 90 days before Excel filed for bankruptcy, and that these payments also constitute avoidable preferences.

On March 13, 2002, Guilford [*3] filed a Chapter 11 bankruptcy petition in the Southern District of New York. Guilford did not give Illig, Excel, or the Trustee notice of any of the various deadlines set in its

bankruptcy case. Except to note that Guilford's plan of reorganization was confirmed on September 20, 2002, and substantially consummated about two weeks later.

During the last week of 2002 and the first week of 2003, the Trustee sent Guilford demand letters about the alleged preferences paid by Illig and Excel. About two weeks later, he filed complaints seeking to recover them from Guilford. The complaint for Illig's bankruptcy estate was assigned Adversary No. 03-6015, and the one for Excel's estate was assigned Adversary No. 03-6033.

In response to the complaints, Guilford made no preliminary motions under *Federal Rule of Civil Procedure 12(b)*, but filed essentially identical answers on March 28, 2003. It admitted the paragraphs of the complaints that alleged this Court had jurisdiction of the proceeding and venue was proper here. As an affirmative defense in each proceeding, Guilford alleged that: (1) the Trustee was not a known creditor of the Guilford bankruptcy estate; [*4] (2) it had given publication notice of the claims bar date, disclosure statement, and plan of reorganization in its case; (3) the published notices gave constructive notice to the Trustee, but he failed to file any proof of claim in Guilford's bankruptcy case; and (4) the Trustee's claim arose before Guilford's plan was confirmed, and so was discharged by confirmation, pursuant to *11 U.S.C.A. § 1141*. The parties submitted planning meeting reports, and scheduling orders were entered in both adversaries. In the Excel proceeding, Guilford filed a motion in January 2004 to amend its answer, which was granted. The amended answer repeated all of the original answer, and then added two new paragraphs before the prayer for relief: one paragraph asserted a contemporaneous-exchange-of-new-value defense under § *547(c)(1)*, and the other asserted that the debts Excel had paid Guilford were secured by a letter of credit, so the payments did not enable Guilford to receive more than it would have received in Excel's Chapter 7 liquidation if the payments had not been made. Discovery was completed in both adversaries by the end of March 2004.

On [*5] April 16, 2004, the day the final pretrial orders were due and more than a year after filing its answers in both adversaries, rather than submitting final pretrial orders, Guilford filed motions to stay the proceedings until the Bankruptcy Court for the Southern District of New York rules on a motion Guilford filed there that same day, asking the New York court to declare that by asserting the preference claims in the Illig and Excel adversary proceedings, the Trustee has violated the discharge Guilford received when its plan of reorganization was confirmed. The Trustee objected, asking that Guilford be required to withdraw the New York motion and be sanctioned for having filed it. This Court held a hearing on the stay motions on May 13. At the hearing, Guilford informed the Court that it had been threatening to file the New York motion since last fall, and the Trustee conceded the motion had not come as a total surprise. Objections to the New York motion are due on May 21, and the motion is set for hearing on May 26.

## DISCUSSION AND CONCLUSIONS

Guilford's argument for staying the proceedings pending before this Court is based on the underlying premise that, although it has raised [*6] its Chapter 11 discharge as a defense to the Trustee's claims here, the Trustee will be able to collect on any judgment he obtains from this Court only by filing a late claim in Guilford's bankruptcy case in New York. Guilford suggests that the Trustee has cited no authority that would permit him to collect his prepetition claims without seeking permission from the New York bankruptcy court. Apparently Guilford believes that only the New York bankruptcy court has subject matter jurisdiction to determine whether the Trustee can collect the claims from it, but it cites no authority to support this view.

Guilford correctly points out that under *28 U.S.C.A. § 1334(e)*, the New York bankruptcy court had exclusive jurisdiction of the property of Guilford's bankruptcy estate. But Guilford overlooks the effect confirmation of its Chapter 11 plan had on that exclusive jurisdiction. *Section 1141(b) of the Bankruptcy Code* provides that confirmation "vests all property of the estate in the debtor" unless the plan or order confirming the plan provides otherwise. Although Guilford has not provided this Court with much of the language of its plan [*7] or the confirmation order, one provision it has quoted mentions "Reorganized Debtors," and the Court is inclined to assume the property of the estate vested in Guilford as a "Reorganized Debtor" rather than as the "debtor" under § *1141(b)*. In either case, though, the property that had been property of the estate ceased to be property of the estate following confirmation, so the exclusive jurisdiction granted by § *1334(e)* ended at that time. Guilford has not pointed to anything in the plan or the confirmation order that provided for the New York bankruptcy court to retain exclusive jurisdiction over Guilford's property after confirmation. Instead, it relies on a bankruptcy court's inherent continuing jurisdiction to interpret and enforce its own orders and determine disputes under a confirmed plan. n1 This Court would agree that the New York court has jurisdiction to decide whether the Trustee's claims against Guilford have been discharged. The Court is simply convinced that it likewise has jurisdiction to decide that question.

See In re Chateaugay Corp., 201 B.R. 48 (Bankr. S.D.N.Y. 1996); Texaco Inc. v. Sanders (In re Texaco Inc.), 182 B.R. 937 (Bankr. S.D.N.Y. 1995); In re Johns-Manville, 97 B.R. 174, 180 (S.D.N.Y. 1989).

[*8]

Although § 1141(d)(1) appears to make confirmation discharge all preconfirmation debts without regard to the adequacy of notice that was given to the creditor owed the debt, in a number of cases, federal circuit courts, including the 10th Circuit, have held that a party's preconfirmation claim against a debtor was not barred by confirmation of the debtor's Chapter 11 plan because the party did not receive notice sufficient to satisfy the constitutional due process requirements of notice and an opportunity to present the claim in the bankruptcy case. n2 Furthermore, in *Reliable Electric*, the 10th Circuit expressly rejected the debtor's argument that the only remedy for a prepetition creditor not given notice as required by due process was to file a late claim under the debtor's confirmed Chapter 11 plan. n3 Other circuits have similarly concluded that a creditor not bound by the plan could proceed against the postconfirmation debtor in a court other than the bankruptcy court that confirmed the debtor's plan. The Fifth Circuit held that a creditor with a preconfirmation claim against a debtor that was not discharged by confirmation of the debtor's plan [*9] did not violate the discharge injunction by filing suit against the reorganized debtor in another federal district nearly ten years after the confirmation. n4 The Third Circuit held that a claimant should have been allowed to proceed with its state court lawsuit to the extent it had a postpetition, preconfirmation claim that it had asserted as a counterclaim in the state court suit. n5 Guilford has cited no authority that disagrees with these circuits. So if the Trustee succeeds in proving that insufficient notice was given to him, his preference claims against Guilford will not be barred even though they arose before Guilford's plan was confirmed.

n2 *See Dalton Development Project # 1 v. Unsecured Creditors Committee (In re Unioil)*, 948 F.2d 678, 682-84 (10th Cir. 1991) (claims based on postpetition, preconfirmation transfers); *Reliable Electric Co., Inc., v. Olson Constr. Co.* 726 F.2d 620, 622-23 (10th Cir. 1984) (prepetition claim); *Christopher v. Kendavis Holding Co. (In re Kendavis Holding Co.)*, 249 F.3d 383, 385-88 (5th Cir. 2001) (claim for pension benefits not discharged by Chapter 11 confirmation despite claimant's knowledge that bankruptcy case was pending because debtor owed fiduciary duty to beneficiaries of pension plan when it sought to terminate the plan to recoup surplus funds, and it sent claimant letter assuring him pension benefits would not be jeopardized by termination of pension plan); *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 96 F.3d 687, 689-90 (3d Cir. 1996) (prepetition claims not known to debtor were discharged by confirmation order despite lack of notice to claimants, but postpetition claims known to debtor were not); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-49 (3d Cir. 1995) (if claimants had been known creditors, due process would have required actual notice before Chapter 11 confirmation could bar them, but since they were unknown creditors, publication notice was sufficient to make confirmation discharge their claims); *see also Jones v. Chemetron Corp.*, 212 F.3d 199, 209-10 (3d Cir. 2001) (claimant not born until after Chapter 11 confirmation cannot be barred by the confirmation); *Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512, 515-19 (5th Cir. 1994) (postpetition claims barred by confirmation of Chapter 11 plan because claimants had notice of pending bankruptcy case and sufficient knowledge to impose duty on them to protect their rights in bankruptcy court).

[*10]

n3 726 F.2d at 623.

n4 *Kendavis Holding*, 249 F.3d at 385-88 (affirming district court's reversal of bankruptcy court's ruling to the contrary).

N5 *Trans World Airlines*, 96 F.3d at 690.

Guilford's argument also overlooks the issue preclusion (or collateral estoppel) effects this Court's judgment would have if the Court does determine that the Trustee's claims were not discharged by confirmation of Guilford's plan. The Second Circuit has explained that one federal court's judgment will preclude a party from later relitigating an issue in another federal court:

> if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. n6

Case 1:05-cv-00202-GMS  Document 10-2  Filed 11/03/2005  Page 5 of 10

316 NLRB v. Thompson, 175 F.3d 103, 109 (2d Cir. 1999) (citations and internal quotation marks omitted).

[*11]

The Tenth Circuit has described issue preclusion in similar terms, although it was addressing the effect of a prior judgment rendered by a state court:

> Issue preclusion applies if: (1) the issue to be precluded here is the same as that involved in the prior action; (2) the issue was actually litigated by the parties in the prior action; and (3) the prior determination of the issue was necessary to the resulting final judgment. n7

n7 *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988).

While issue preclusion sometimes involves difficult determinations, its application would be simple if this Court enters a judgment in the Trustee's favor and the Trustee tries to enforce that judgment against Guilford in the Bankruptcy Court for the Southern District of New York. Guilford has appeared before this Court, has raised the defense that the confirmation of its plan discharged the Trustee's claims, and has been actively litigating that question here, so any [*12] judgment this Court would enter that allowed the Trustee to recover from Guilford would necessarily decide that the Trustee's claims were not discharged. Guilford would not be entitled to relitigate that issue in the courts of the Southern District of New York.

Beyond the mistaken assumption that the Trustee can collect on his claims only by filing a late claim in Guilford's bankruptcy case, Guilford has not claimed that this Court does not have jurisdiction of the subject matter of these proceedings or does not have personal jurisdiction over Guilford. At most, now that the Court has rejected Guilford's mistaken assumption, Guilford is claiming that the Court should exercise its discretion to defer the discharge question to the New York bankruptcy court. Of course, Guilford was already aware of the facts underlying its stay motions before it filed its answers in these proceedings, but refrained from asking for the stays until more than a year later, on the day the final pretrial orders were due to be filed here. Had it asked for the stay early on, the Court would have been much more willing to consider having the New York court decide the discharge question. As Guilford correctly [*13] points out, a decision in its favor on that question would have foreclosed further litigation of the other issues raised in these proceedings. On the other hand, Guilford overlooks the possibility the New York court might decide that the Trustee's claims were not discharged. If that happened, the parties would have to return to this Court and proceed with the rest of the litigation now pending here anyway. For that matter, Guilford could have sought an early decision on the discharge question by filing a motion to dismiss before this Court. Instead, it waited until essentially all the pretrial proceedings were completed and the cases were ready to be tried before it decided to institute a new proceeding in another court to obtain an answer to a potentially — but not certainly — dispositive question that this Court also has jurisdiction to decide. Whatever strategic considerations might have caused Guilford to adopt this course, they carry no weight with this Court now. The Court is convinced that any option or right Guilford might have had to seek a New York ruling on the discharge question earlier in these proceedings has been waived by its inexplicable delay in seeking that relief. [*14] n8

n8 *See Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

Guilford suggests that because its bankruptcy case was filed before the Trustee filed these adversary proceedings, the New York bankruptcy court was the first whose jurisdiction attached to the discharge question, citing the Tenth Circuit's decision in *O'Hare International Bank v. Lambert*. n9 The Court cannot agree. Until Guilford filed its New York motion for an order enforcing the injunction, discharge, and release provisions of its plan, that question had not been raised before the New York bankruptcy court. So far as this Court is aware, the Trustee has not appeared in the New York case, or otherwise been subjected to personal jurisdiction there. This Court believes that when the Tenth Circuit referred to one federal court's jurisdiction having "attached" before another's, it meant that the court not only had general subject matter jurisdiction over the dispute brought before it and sought to be raised in [*15] another court, but had also effectively obtained personal jurisdiction over the parties involved in the dispute before the other court obtained such jurisdiction. n10 These requirements were satisfied here at least when Guilford filed its answers, more than a year before it filed its stay motions. Guilford has not yet shown, however, that the New York bankruptcy court has obtained personal

jurisdiction over the Trustee.

n9 *459 F.2d 328, 331 (10th Cir. 1972).*

n10 *See Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161 (10th Cir. 1982); O'Hare Int'l Bank v. Lambert, 459 F.2d 328 (10th Cir. 1972).*

Under the circumstances, the Court concludes that it is appropriate to direct Guilford to withdraw the motion it has filed in the New York bankruptcy court. The Second Circuit has recognized that one federal court that has obtained jurisdiction over a matter can enjoin a party from pursuing litigation on the same matter in another federal court. n11 Guilford has not [*16] convinced the Court that anything would be gained at this late date by staying these proceedings so it can seek a determination of the discharge question from the New York bankruptcy court.

n11 *See City of New York v. Exxon Corp., 932 F.2d 1020 (2d Cir. 1991); Coakley & Booth, Inc., v. Baltimore Contractors, Inc., 367 F.2d 151 (2d Cir. 1966); see also 17A Wright, Miller & Cooper, Fed. Prac. & Pro.: Jurisdiction, 2d, § 4247 at 121-23 (1988)* (describing as "well settled" the view that one federal court before which issues are pending may enjoin going forward on the same issues in another federal court).

Guilford's motions to stay these proceedings are hereby denied. Guilford is hereby directed to withdraw the motion it filed in the New York bankruptcy court in April 2004, seeking an order enforcing the injunction, discharge, and release provisions of its confirmed Chapter 11 plan. The Court does not believe that Guilford's request for the stays was presented in bad [*17] faith or was frivolous, so the Trustee's request for sanctions is hereby denied.

IT IS SO ORDERED.

Dated this 17th day of May, 2004.

DALE L. SOMERS

BANKRUPTCY JUDGE

# EXHIBIT C

IN RE MICHAEL J. LANCASTER and JANE LANCASTER, Debtors.

Case No. 02-21540

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF IDAHO

2003 Bankr. LEXIS 11

January 3, 2003, Decided
January 3, 2003, Filed

**DISPOSITION:** [*1] Debtors' request denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For EVELYN JANE LANCASTER, MICHAEL J LANCASTER, Debtors: ANNA M ECKHART, ANNA M ECKHART ATT AT LAW, COEUR D ALENE, ID.

**JUDGES:** HONORABLE TERRY L. MYERS, UNITED STATES BANKRUPTCY JUDGE.

**OPINIONBY:** TERRY L. MYERS

**OPINION:**

### MEMORANDUM OF DECISION

HONORABLE TERRY L. MYERS, UNITED STATES BANKRUPTCY JUDGE

### I. INTRODUCTION

The above chapter 7 Debtors seek to avoid certain judicial liens under § 522(f)(1)(A) on the basis that such liens impair their homestead exemption. Upon its review of the entirety of the record and consideration of relevant authority, the Court concludes that Debtors' request must be denied based upon lack of proof of proper service on the lienholders.

### II. BACKGROUND AND FACTS

Michael and Jane Lancaster ("Debtors") filed a voluntary chapter 7 petition on October 11, 2002. They also then filed their schedules and statements of financial affairs. On schedule C they claimed, under § 522(b) and § 55-1001, *et seq.*, a homestead exemption in real property located in Kootenai County, Idaho.

The § 341(a) meeting of creditors and examination occurred on November 21, 2002. No [*2] objection to the Debtors' exemptions was filed within 30 days of that meeting, and the exemptions are thus allowed. *See* § 522(l); *Fed. R. Bankr. P. 4003(b)*; *In re Conley*, 99.1 I.B.C.R. 7 (Bankr. D. Idaho 1999).

On December 10, the Debtors' filed a "Motion to Avoid Judicial Lien and Notice of Hearing." *See* Doc. No. 7 ("Motion"). The Motion was served, in the fashion discussed below, on five separate creditors holding such liens, and they were advised of a hearing on the Motion scheduled for December 19, 2002. The hearing was held, and Debtors appeared in support of the Motion. The chapter 7 trustee appeared but took no position on the matters. None of the affected creditors appeared, nor did any file an objection. The Court took the matter under advisement.

### III. DISCUSSION AND DISPOSITION

Section 522(f)(1)(A) allows a debtor to avoid a "judicial lien" to the extent the lien impairs the debtor's exemption. The Code defines a judicial lien as

> [a] lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

§ 101(36). In light of the documents attached to the Motion, each of the subject liens here appears [*3] to have been created by the recording of a judgment in the real property records of Kootenai County. This recording provided each creditor with a lien on all property of Debtors in Kootenai County by virtue of *Idaho Code § 55-1110*.

A request to avoid a lien under § 522(f)(1)(A) is brought "by motion in accordance with Rule 9014." *See Fed. R. Bankr. P. 4003(d)*. n1 Rule 9014 addresses "contested matters" and provides, in part, that a motion "shall be served in the manner provided for service of a summons and complaint by Rule 7004."

set. This is an exception to the general requirement that a party commence an adversary proceeding when it wishes to determine the validity or extent of a lien. *See Fed. R. Bankr. P. 7001(2).*

Debtors' certificate of mailing indicates that the Motion was served on the following creditors by mail, addressed as indicated, as well as being served on the trustee and the U.S. Trustee:

J. R. Finance Co.
303 Spokane Avenue
Coeur d'Alene ID 83814

Johnson Rountree n2

> n2 This name might be read as referring to either an individual or an entity. The Motion, however, makes it clear that this creditor is a corporation.

[*4]

P. O. Box 264

Spokane WA 99210

Coeur d'Alene Credit Bureau

c/o Romer Brown

Attorney at Law

P. O. Box 1148

Coeur d'Alene ID 83814

ACS, Inc. of Idaho
2005 Ironwood Parkway, Suite 220
Coeur d'Alene ID 83814

North Idaho Credit Corp.

315 Locust Avenue

Coeur d'Alene ID 83814

Rule 7004(b)(1) through (b)(10) set forth the requirements for proper service by first class mail in bankruptcy cases and adversary proceedings. n3 Pertinent to the instant case and these five creditors are the requirements of Rule 7004(b)(3):

> (b) Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

[*5]

> n3 Rule 7004 addresses other means of service as well. For example, Rule 7004(a) incorporates several subdivisions of *Fed. R. Civ. P. 4*, and Rule 7004(c) addresses service by publication. Of particular note (since it has proven to be the bane of some litigants) is Rule 7004(h) which requires service by certified mail, in most situations, upon insured depository institutions. *See, e.g., Fleet Credit Card Servs., L.P. v. Tudor (In re Tudor), 282 B.R. 546, 550-52 (Bankr. S.D. Ga. 2002)* (addressing Rule 7004(h) applicability and operation).

The service of the Motion and the notice of hearing here did not comply with Rule 7004(b)(3) as to any of these five entities. The Motion was not directed "to the attention of an officer, a managing or general agent," or to any other "authorized agent" of any of these entities. Rule 7004(b)(3). Thus, the service is insufficient. *See In re Egan,* Case No. 00-41030 (Bankr. D. Idaho Nov. 8, 2002) (addressing Rule 7004(b)(3) and the insufficiency of service on [*6] a corporation which "was not directed to any particular individual, and was certainly not addressed to any officer, manager or agent"); *accord In re Venegas, 257 B.R. 41, 45, 01.1 I.B.C.R. 5,* 6 (Bankr. D. Idaho 2001) (addressing similar requirement of Rule 7004(b)(6) requiring service to be directed to municipal officer).

The Court notes that, in regard to one creditor (Coeur d'Alene Credit Bureau), Debtors served their Motion by mailing it to the attorney who had appeared for that creditor in the state court litigation which gave rise to the recorded judgment. n4 However, there is no subdivision of Rule 7004 which appears to countenance this form of service, nor is there anything in the record before the Court indicating an appearance was made in the bankruptcy case such that service on the attorney could stand in lieu of service on the affected creditor. *See In re Rae, 286 B.R. 675, 2002 Bankr. LEXIS 1572,*

(service of § 522(f) motion on attorney who had appeared for lien creditor in pre-bankruptcy litigation giving rise to the lien was not sufficient under Rule 7004); *accord Citicorp Mortgage, Inc. v. Brooks (In re Ex-Cel Concrete Co.), 178 B.R. 198, 203-04 (9th Cir. BAP 1995)* [*7] (service on attorney is effective under Rule 7004 only where the attorney has agency relationship or has appeared in same action; appearance for the party in other matters is not sufficient). This alternative service is therefore also found inadequate. n5

> n4 This fact is made evident from the face page of the Coeur d'Alene Credit Bureau recorded judgment which is attached to the Motion. Oddly, though four of the five judicial liens stemmed from judgments in cases where the creditor had counsel, and the names of these attorneys appeared on the face pages of the recorded judgments as appended to the Motion, Debtors elected to use this style of service with only Coeur d'Alene Credit Bureau.

> n5 The Court acknowledges that orders have previously been entered under § 522(f) where the service was made on the state court counsel for the judgment creditor. However, earlier laxity of review or error of analysis cannot serve as binding precedent.

The Court appreciates that no opposition was raised to the Motion. But [*8] that fact alone does not absolve the Court of its responsibility to ensure that relief may properly be entered. *See Roberts v. Nat'l Mortgage Servs. (In re Roberts),* 98.4 I.B.C.R. 106 (Bankr. D. Idaho 1998) (explaining Court's duty to ensure relief is proper even in absence of contest); *accord GMAC Mortgage Corp. v. Salisbury (In re Loloee), 241 B.R. 655, 662 (9th Cir. BAP 1999)* ("Parties are entitled to presume that the court will comply with applicable rules of procedure and that they will receive the notice that is usually required.")

When so much of the daily diet of bankruptcy practice is handled by "notice and hearing" under § 102(1), and on the nonappearance or nonobjection of a party who has been provided an opportunity to appear or object, it is appropriate that both the Court and counsel for the proponent pay heed to the requirements of proper service. As noted in *Ultrasonics, Inc. v. Eisberg (In re Ultrasonics, Inc.), 269 B.R. 856, 861-62 (Bankr. D. Idaho 2001)*, the special and "comparatively lenient" procedure of service by mail in bankruptcy cases requires parties to strictly comply with Rule 7004, thus protecting due process rights [*9] while still allowing bankruptcy matters to proceed expeditiously.

## IV. CONCLUSION

Since the five creditors here were not properly served, the requested relief may not be entered at this time. The Motion will be denied, without prejudice to renewal. An order will be entered accordingly.

Dated this 3rd day of January, 2003.