**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors, | ) | |
| | ) | |
| CROMPTON COLORS, INC. | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 05-232 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL TEXTILE GROUP, INC., | ) | |
| f/k/a WLR Cone Mills | ) | |
| Acquisition LLC, f/k/a | ) | |
| WLR Recovery Fund II, L.P. | ) | |
| | ) | |
| Appellee | ) | |

**APPELLANT'S REPLY BRIEF REGARDING THE EXTINGUISHMENT
OF A KNOWN CREDITOR'S CLAIMS AND INTERESTS WITHOUT NOTICE OF
ANY KIND THAT ITS CLAIMS WERE IN JEOPARDY**

**(Oral Argument Requested)**

CHDATA

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................................... i

Table of Authorities ............................................................................................................. ii

Introduction ........................................................................................................................... 1

I.   Rule 6004(c) Applies. ................................................................................................... 2

II.  The Proper Application of Rule 6004(c) Does Not Lead
     To The "Sky is Falling" Results Claimed by ITG. ....................................................... 5

     A.  Rule 363 Sales Do Not Always Trigger Rules
         6004(c), 9014, 7004. ............................................................................................. 5

     B.  Compliance with Rule 6004(c)/9004/7004 is Not
         The Burden ITG Pretends, and is Outweighed by
         The Power of Extinguish Claims. ......................................................................... 7

III. Rule 6006 Requires Service Under Rule 7004. ............................................................ 8

IV.  Even if ITG were Correct with Regard to Rules 6004(c)
     And 6006, the Notice Failed to Comport with Rule 2002(a)(2). ................................. 8

V.   The Sole Notice Provided Could Not Apprise Chemtura
     That its Claims were in Jeopardy. ............................................................................... 10

VI.  Chemtura's Documents Handling Procedures are Proper. ......................................... 13

Conclusion .......................................................................................................................... 15

# TABLE OF AUTHORITIES

## **CASES**

| | Page |
|---|---|
| In re Broomall Industrial, Inc., 786 F.2d 401 (Fed. Cir. 1986) | 14 |
| In Re Carematrix Corp., 306 B.R. 478 (Bankr. D. Del. 2004) | 14 |
| In Re GST Telecom, Inc., 2002 U.S. Dist. LEXIS 18745 (D. Del. July 29, 2002) | 1, 8, 9, 10 |
| In Re Golden Books Family Ent., Inc., 269 B.R. 300 (Bkr. D. Del. 2001) | 10 |
| In Re LaRouce Industrial, Inc., 307 B.R. 774 (D. Del. 2004) | 14 |
| Lawrence Tractor Co. v. Gregory, 705 F.2d 1118 (9th Cir. 1983) | 13 |
| In re Main, 157 B.R. 786 (W.D. Pa. 1992) | 9, 13 |
| In re Pinnacle Brands, Inc., 259 B.R. 46 (D. Del. 2001) | 5 |
| In Re Trans World, 322 F.3d 283 (3d Cir. 2003) | 3 |
| In Re Trans World Airlines, 96 F.3d 687 (3d Cir. 1996) | 14 |
| In re Unioil, 948 F.2d 678 (10th Cir. 1991) | 14 |

## **MISCELLANEOUS**

| | |
|---|---|
| Collier on Bankruptcy, 363.13 (15th Ed. 1992) | 3 |

## **RULES**

| | |
|---|---|
| Rule 363 (f) | 1, 2, 3, 4, 5 |
| Rule 2002 (a) | 1, 3, 4, 6, 7, 8, 9, 10, 13 |
| Rule 6004(c) | 1, 2, 3, 4, 5, 6, 7, 10, 13 |
| Rule 6006 | 1, 8 |
| Rule 7004 | 2, 4, 5, 6, 7, 8, 10, 13 |
| Rule 9014 | 1, 4, 5, 6, 7 |

## **INTRODUCTION**

It is remarkable that ITG can write a 34-page brief, and yet, barely address the issues raised on this appeal. Ignoring Chemtura's careful analysis of Rule 6004(c), and its interplay with Section 363 of the Bankruptcy Code, ITG baldly contends that Rule 6004(c) is inapplicable because Chemtura had no interest in the assets. To support this proposition, ITG relies almost exclusively on its contention that the Bankruptcy Court held so below. However, as is explained below, the Bankruptcy Court never made such a finding, and instead, actually implicitly concluded that Chemtura did have such an interest in the Debtor's assets.

Similarly, even though the only notice sent to Chemtura was the Cure Amount notice, which deals with executory contracts, and which pursuant to Rule 6006 triggers the heightened requirements contained in Rules 9014 and 7004, ITG dismisses the requirements of Rule 6006 in a footnote by arguing that "Chemtura does not have any executory contracts with the Debtors." (ITG's Opp. Brf. at 18, n. 9). Interestingly, while essentially ignoring Chemtura's Rule 6006 argument, ITG uses three pages to argue that when a bankruptcy notice is placed in the mail, it is presumed that the recipient received this notice. That Chemtura's mailroom received the Cure Amount notice is not even an issue in this case.

Finally, while ITG does address the Rule 2002 issue, it does so primarily by misinterpreting this Court's decision in *In Re GST Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745 (D. Del. July 29, 2002), and blatantly attempting to mislead the Court on the actual language and content of the Cure Amount notice, by using ellipses in ITG's brief to omit language and change the meaning of the document.

Indeed, when the smoke clears, it is evident that ITG has failed to adequately address the issues raised in Chemtura's appeal, nor has it been able to defend this clearly erroneous ruling of the Bankruptcy Court.

**I.     RULE 6004(c) APPLIES.**

ITG's opposition to the application of Rule 6004(c) and the Rule 7004 notice requirements is based entirely upon the mistaken presumption that Chemtura does not have any "other interest" in the sale. Indeed, ITG admits that these rules would absolutely apply, and Chemtura's claims would therefore survive, if such an "interest" existed. (ITG Brief, at 14 (R.6004(c) applies to all who have "interest.")). Contrary to ITG's presumption, however, Chemtura did have an interest as a matter of law. Indeed, ITG offers no evidence or case law to support its assertion.

Instead, ITG relies on the entirely false assertion that the Bankruptcy Judge found that Chemtura had no such interest. To the contrary, during the argument below, the Court merely asked counsel for Chemtura whether Chemtura had such an interest, and did not pursue the question further once counsel reminded the Court that Rule 363 (f) sales can only extinguish rights relating to "interests" in the property to be sold.[1] Thus, if there were no such interest, Chemtura's claims would survive the sale order even if ITG and the debtor had complied with the Rule 6004(c)/7004 notice requirements because a Rule 363(f) sale could not have extinguished these claims. (Exh. 17, Hearing Tran., at 29-30).[2]

---

[1]   Rule 363(f) explicitly limits extinguishment of claims in a Rule 363(f) sale to creditors with an "interest" in the property.

[2]   The exchange between the Bankruptcy Court and Chemtura proceeded as follows:

**Mr. Barkasy:**   I'll read from a quote in our papers from *Colliers* who reads it the same way we do. "Service on parties with an interest in property must be made in the manner provided under Rule 7004 as required by Rule 9014."

**The Court:**   Well assuming that's correct, do you fit that category of 6004(c)? Did you have an interest in the property being sold?

**Mr. Barkasy:**   If we didn't have an interest in the property being sold, then the order doesn't apply to us, because 363(f) only permits an interest or a claim to be cut off if it's an interest in the property

(Fn 2 Con't Next Page . . .)

The issue was never again raised by the Court and there was certainly no "finding" as alleged by ITG in its Brief. To the contrary, implicit within her ruling was a finding that there was such an interest because she held that the Rule 363(f) sale did operate as an extinguishment of Chemtura's claims.[3]

Indeed, had the Court made a "no interest" finding, it would have been error. As explained in Chemtura's moving brief, the Third Circuit has clarified that unsecured creditors without liens or other security in the property still have "interests" for purposes of property sales under the Bankruptcy rules, specifically when the sale triggers successor liability claims. (Chemtura's Moving Brf. at 22; *In Re Trans World*, 322 F.3d 283 (3d Cir. 2003)). It is precisely because such "interests" can be extinguished by a Rule 363(f) sale that Rule 6004 (c) requires the particularized notice of the motion as set forth in Rule 7004. *See Collier on Bankruptcy*, 363.13 (15th Ed. 1992).

---

(Con't of Fn 2 . . . )

to be sold under 363(f) and the cases upon which ITG and the debtor rely to argue that the order isn't too broad, and it covers [Chemtura's] claim are - - what they say is that claims are interest in the property to be sold. So if it's not an interest in the property to be sold under 363, then the order doesn't apply to [Chemtura], and [Chemtura] wins. If it does have an interest it the property to be sold, and there's reliance, the order is going to cut off that interest. Then 6004(c) applies, and 6004(c) we think, consistent with *Colliers'* reading and our reading, is that it requires service under Rule 7004. So we think the argument that there's no interest is - - it can't be both ways.

[3] When the Bankruptcy Court ruled from the bench that it was going to cut off [Chemtura's] successor liability claim, it never suggested that [Chemtura] had no interest in the Debtor's assets. Instead, the Court ruled the Section 363(f) sale, which can only cut off interests in the property, cut off [Chemtura's] claim. The court held that service in a 363(f) sale that extinguished a creditor's interest did not have to comply with Rule 7004. That was the Court's error.

The Bankruptcy Court held:

**The Court:** Well, I'm not convinced that service under Rule 7004 was necessary. I think if that were true, then it would eliminate Rule 2002(a)(2) and 6004(a). I think that the proper reading of 6004(c), so as not to make 6004(a) and 2002(a)(2) of no force and effect, is to read it to mean that the manner proceeding or filing a motion to sell property will follow 9014, but that service is otherwise governed by 6004(a) and 2002(a)(1) - - excuse me - - (2). And I think it's clear that service on Chemtura was made in accordance with those rules. (Exh. 17, Hearing Trans., at 46).

ITG cannot have its cake and eat it too.  If ITG seeks to utilize the extraordinary power of the Bankruptcy Rules to extinguish claims through a sale of assets, the notice provisions of Rules 6004(c)/9014/7004 must be complied with.  Only if the claims are not to be cut off would it ever be sufficient to merely comply with the notice provisions of Rule 2002 (a)(2).  ITG cannot utilize a Rule 363(f) sale order to its benefit, yet avoid its attendant Due Process notice requirements.

Here, the debtor and the buyer chose to involve themselves in a transaction that clearly raised successor liability issues.  ITG chose to purchase substantially all of the debtor's assets, and to continue the debtor's business with the debtor's employees and managerial staff.  In doing so, creditors such as Chemtura with its $6 million dollar claim had an interest in the assets as defined by Third Circuit law.  In order to extinguish those rights and interests, the debtor and ITG were obligated to comply with the Rules that provided them with that extraordinary power.

ITG's opposition simply ignores the applicable law, relies on "findings" from below that did not occur, and ignores the simple principal explained in *Colliers* -- if you want to have the very unusual and special right afforded by the Bankruptcy Rules to forever extinguish a known creditor's claims -- you must at least comply with the relatively simple notice requirements of Rules 6004(c), 9014 and 7004.

## II.     THE PROPER APPLICATION OF RULE 6004(c) DOES NOT LEAD TO THE "SKY IS FALLING" RESULTS CLAIMED BY ITG.

ITG attempts to muddy the water by offering a non-legal policy argument that, if Rule 6004 (c) requires notice under Rules 9014 and 7004 when claims are to be extinguished -- *all* unsecured creditors would have to receive Rule 9014/7004 notice of *all* Rule 363 sales. First, this is not even close to being true. Second, compliance with the Rules is not at all difficult. Third, any perceived difficulty is outweighed by the extraordinary benefits such notice provides -- the right, through mere service by mail, to extinguish a known creditor's claims.

### A.     **Rule 363 Sales Do Not Always Trigger Rules 6004(c)/9014/7004.**

Not all § 363 sales trigger Rule 6004(c)/9014/7004 notice because not all § 363 sales seek to extinguish all claims of all creditors.[4] Section 363(f) merely sets forth the grounds upon which those sales that are to be free and clear of all claims are permitted.

Moreover, even a Rule 363(f) sale does not necessarily extinguish *every* creditor's claims. For example, a creditor that was fully secured by a mortgage on one building owned by the debtor would have no interest in a sale of a different building owned by the debtor. The sale of the different building would not extinguish any of that creditor's interests, and notice to it under Rule 2002 (a) would be sufficient. The sale would not extinguish that creditor's claims.

The sole case cited by ITG with respect to its "lack of interest" argument, *In re Pinnacle Brands, Inc.*, 259 B.R. 46 (D. Del. 2001), provides yet another example. There, a third party's only connection to the debtor was through a licensing agreement. The Debtor was selling only a portion of its assets (a baseball card inventory) at auction, and none of the third party's claims were extinguished by the sale. Accordingly, Rule 6004 (c) notice was not required. (*Id. passim*).

---

[4]     Only a subset of § 363 sales involve extinguishment of claims.

Since there are numerous instances in which Rule 2002 (a) notice would suffice under Chemtura's reading of the Code, ITG's projections of dire results is simply not reality.

Indeed, the alternative would violate basic notions of Due Process and even common sense. Under ITG's proposed reading -- putting aside that it fails to even address the language of the Rules themselves -- a creditor with a $50 lien would be required to receive Rule 6004(c)/9014/7004 notice if the sale would extinguish his claim. That creditor would be specifically warned that its tiny claim was being cut-off, how it was being done, when and under what terms.

But an unsecured creditor with a $50 million successor liability claim could have its claim completely extinguished without being served with the sale motion and without any notice of the extinguishment ever being sent to a corporate officer, so that the creditor could at least be apprised that its claims were to be extinguished and the terms thereto. Indeed, a large corporate $50 million creditor would have far more incentive to challenge the terms of the sale (such as the sale price), yet would be unlikely under ITG's approach (which is to serve no one in particular at the creditor's mailroom) to even understand that its claim was in jeopardy.

For all of the reasons stated in Chemtura's moving brief, the Code and Due Process demand full rule 6004(c)/9014//7004 service and notice to the creditors whose claims will be extinguished. Chemtura's claims survive because it is undisputed that it did not receive notice under Rules 6004(c), 9014 or 7004.

**B.     Compliance with Rule 6004 (c)/9014/7004 is Not the Burden ITG Pretends, And is Outweighed by the Power to Extinguish Claims.**

In those instances in which claims are to be extinguished by a Rule 363 sale, compliance with Rules 6004(c) and 7004 is not overly burdensome.

With respect to Rules 6004(c) and 9014, service of the motion - - by mail - - is far less burdensome than the personal service that is required in every single other non-bankruptcy context where a party's rights are to be terminated. If the debtor and ITG did not believe the simple postage and copying charges were worth spending to effectuate their extinguishment of other entities' claims in their $46 million sale, they could always have simply chosen not to cut off those claims.

Compliance with Rule 7004 when serving a corporation is not any more burdensome than compliance with every notice under Rule 2002(a). All that is required is an additional line on the envelope -- "attention officer." (R. 7004(b)(3)).

When these "burdens" are considered in light of the huge benefit and extraordinary power bestowed by the Code upon a debtor and buyer to extinguish other parties' rights and claims, and to do so my mere service by mail, these "burdens" are no burdens at all.

### III. RULE 6006 REQUIRES SERVICE UNDER RULE 7004.

ITG similarly ignores the import of Rule 6006. (See Chemtura's Moving Brf. at 26-27). ITG admits that the sole document ever given to Chemtura was the Cure Amount notice. On its face this document is a notice concerning the assumption or rejection of executory contracts and the fixing of cure amounts. Indeed, the debtor and ITG admitted to this in their motion to approve the sale. (Exh. 1, Motion to Approve Sale, ¶ 44 ("to facilitate the sale, assumption and assignment of assumed contracts . . . the Debtors proposed to serve the Cure Amount Notice . . . for fixing any cure amounts owed on all unexpired leases, license agreements and executory contracts.")).

Rule 6006 also requires any notice to comply with Rule 7004, and ITG admits there was no such compliance.[5]

### IV. EVEN IF ITG WERE CORRECT WITH REGARD TO RULES 6004(c) AND 6006, THE NOTICE FAILED TO COMPORT WITH RULE 2002(a)(2).

It is undisputed that the belated supplemental Cure Amount notice was the sole notice provided to Chemtura and that it was not even sent to the attention of a Chemtura officer or agent. Thus, under *In Re GST Telecom, Inc.*, 2002 U.S. Dist. LEXIS 18745 (D. Del. July 29, 2002), which requires that Rule 2002(a)(2) notice be sent to the attention of a large corporation's officer or agent, the Sale Order does not apply to Chemtura even under Rule 2002 (a) and Chemtura's claims are not extinguished.

ITG contends in its opposition brief that the mandates set forth by this Court in *GST Telecom* do not apply because the notice in *GST Telecom* was delivered to the "wrong address," and, here, the address was "correct." This is an amazing assertion by ITG, given the

---

[5] ITG's "burdensome" argument is especially silly in the context of the 6006 notice. There were only three entities served with such notice. (*See* Supplemental Cure Amount Notice, p. 3, service list).

clear holdings in *GST Telecom* as quoted at length in Chemtura's moving brief. (Moving Brf. at 27-28). Those holdings make crystal clear that notice to a large corporation that is sent to the corporation's mailroom must at least include "to the attention of an officer" in the address to fulfill basic Rule 2002(a) requirements. *Id.* at 23-24. These holdings do not turn on whether or not an address is otherwise correct.

In fact, the debtor in *GST* **did send the notice to the proper address of the creditor's mail room** -- but failed to add additional routing information to get that notice out of the mailroom to people at the creditor with knowledge of the claim. Therefore, the Court held that to comply with Rule 2002 (a) (2), the notice had to at least indicate that it should be delivered to an officer or agent. The failure to do so rendered the notice and subsequent order ineffective to extinguish the creditor's rights. *Id.* at *23-24.

That is exactly what happened here. The notice was sent to the large corporation's general mailing address, but the debtor and ITG failed to include any information that would route it to people in the organization that the debtor and ITG knew had knowledge of the claims. All the debtor and ITG had to include was: "Attention Officer or Agent." Yet they failed even that simple requirement.

Under the mandates of *GST Telecom* and all other cases cited by Chemtura in its moving brief, the failure to provide any such specification when a large corporation is the notice recipient is fatal to an effort to extinguish that corporation's claims. Thus, *GST Telecom* is exactly on point.[6]

---

[6]   ITG fails to even address *In re Main*, 157 B.R. 786 (W.D. Pa. 1992), the other "mailroom case" from which Chemtura quoted extensively in its moving brief.

ITG's other efforts to distinguish *GST* are hardly worth mentioning. The fact that Chemtura is a large corporation and the creditor in *GST* was a government agency is a distinction without a difference for the notice issued addressed in *GST*. There is also no legal support for ITG's attempt to ignore Chemtura's

In fact, the lack of proper addressee/routing information is even more egregious here than it was in *GST Telecom*. ITG misleadingly argues that the address it used here "was the same address listed in Chemtura's business letterhead from which all pre-petition correspondence between the Debtors and Chemtura had been received." (ITG Brf., at 25). But the Debtors' pre-petition correspondence was with Ms. Pamela Missal, the Chemtura in-house counsel with knowledge of Chemtura's claims. Inexplicably, ITG and the debtor refused to include her name to route the notice to someone with knowledge. Because ITG and the debtor had specific, proper routing addresses of persons with knowledge but chose not to use them, their failure to include even a non-specific reference to an "officer" is therefore especially improper.[7]

ITG and the debtor therefore failed to comply with Rule 6004(c), Rule 7004 *and* Rule 2002(a).

## V.    THE SOLE NOTICE PROVIDED COULD NOT APPRISE CHEMTURA THAT ITS CLAIMS WERE IN JEOPARDY.

Even if all of the above were ignored, fundamental Due Process would be violated if the very misleading Cure Amount Notice could be utilized by ITG to extinguish Chemtura's claims.

ITG admits that the debtor had no executory contracts with Chemtura, yet also admits that the only notice ever sent to Chemtura was the Cure Amount Notice, the very notice that they admitted in their Motion to Approve the Sale (not sent to Chemtura) was intended merely to fix cure amounts on executory contracts – not to warn other creditors that their claims were being wiped out. (*See* Exh. 1, Motion to Approve, ¶ 44 (Cure Amount Notice document

---

corporate size - - some 5,000 employees in multiple locations around the world -- and focus instead on the size of the staff in a particular building.

[7] *See In Re Golden Books Family Ent., Inc.,* 269 B.R. 300, 303 (Bkr. D. Del. 2001) (notice of asset sale deficient for failure to address to particular person with knowledge or officer; particularly unreasonable because debtor was in possession of the names of the people with knowledge of the claims).

intended for "fixing any cure amounts owed on all unexpired leases, license agreements and executory contracts)).

ITG repeatedly contends that this Cure Amount notice was somehow sufficient, because it warned Chemtura that the assets would be sold free and clear of its successor claim. In order to support this assertion, ITG blatantly distorts the record. ITG states that paragraph 4 of the Cure Amount notice sent to Chemtura informed Chemtura that "with its proposed asset sale(s), the Debtors intent [sic] to . . . sell . . . free and clear of all liens, claims, encumbrances, and interests . . ." (ITG Opp. Brf. at 17). This improper use of ellipsis by ITG creates a blatant misrepresentation that falsely implies that it discussed selling the assets free and clear.

In fact, a simple review of the document itself demonstrates the opposite of ITG's representation. Paragraph 4 actually states:

> . . . with its proposed asset sale(s), the Debtors intend to **assume, sell, and assign certain of their unexpired leases, license agreements, and executory contract (collectively referred to as the "contracts") free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the Cure Amounts required under Section 365(b)(1)(A) of the Bankruptcy Code (the Prepetition Cure Amounts).**

(Cure Amount Notice, Exhibit 13, ¶ 4) (emphasis added). Contrary to ITG's contention, paragraph 4 of the Cure Amount notice explicitly states that the only items being sold "free and clear" are the leases, licenses and executory contracts, and that it is those contracts that would be "free and clear" upon satisfaction of the Cure Amounts.

Moreover, nowhere else in the notice does it say that the claims of creditors without executory contracts will be extinguished, so there is no notice to Chemtura that its successor liability claims were to be cut off. The only additional reference in the Cure Amount notice to any possibility of any loss of rights is again related solely to executory contracts and

their pre-petition cure amounts.  In fact, the sole warning the document issues to anyone who does not respond or file an objection is that they will:

> (a) be forever barred **from objection to the Prepetition Cure Amount** and from **asserting any additional cure amounts with respect to such Proposed Assumed Contracts** and the Debtor shall be entitled to rely solely upon the Prepetition Cure Amount, and (b) be **deemed to have consented to the assumption and assignment of such Proposed Assumed Contracts and shall be forever barred and estopped from asserting or claiming** against the Debtor, WL Ross or such other successful bidder(s) or any assignee of the relevant Proposed Assumed Contract **that any additional amounts are due** or default exist, or conditions to assumption and assignment must be satisfied **under such Proposed Assumed Contract.**

(*Id.,* second to last paragraph) (emphasis added).  There is simply no notice anywhere in this document that the assets were being sold free and clear, nor that Chemtura's claims were otherwise about to be extinguished.  No reference in this document to any asset sale includes any notice of any kind that the sale would be free and clear of anything or that rights relating to those assets would be extinguished.

Thus, ITG and the debtor, knowing and intending to extinguish Chemtura's successor liability claims, knowing that Chemtura did not have any executory contracts with the debtor, and knowing that the Cure Amount notice did not include any information that the assets would be sold free and clear of claims -- withheld the Sale Motion and chose to limit any notice sent to Chemtura to a Cure Amount notice that limited any extinguishment of claims specifically to executory contracts, and which they admitted was designed merely to set cure amounts.

Worse, they then chose not to include the routing information that they had possession of to get that notice to Ms. Missal, and they sent it to a mailroom of a large corporation without indicating even that it should be seen by an officer.

This "notice" cannot substitute for proper notice under Rule 6004(c) or Rule 7004, nor even for proper notice under Rule 2002(a).

## VI. CHEMTURA'S DOCUMENT HANDLING PROCEDURES ARE PROPER.

Finally, ITG proffers a red herring argument regarding Chemtura's internal document handling procedures. Chemtura's document procedures have nothing to do with application of the Code, and they are appropriate and proper. The document sent to the mailroom did not indicate that a sale would occur free and clear of all claims, and it contained no indication that it should receive special attention from an officer. The document was reviewed in accordance with the way it was served as set forth in Chemtura's moving brief.

Ignoring these facts, ITG argues that the numerous notice failures in this case are all somehow forgiven because Chemtura personnel who would receive documents addressed to no one in particular did not somehow know to send it to Ms. Missal in the legal department. Essentially, ITG is arguing that known creditors somehow lose their rights to proper notice if they do not have internal procedures designed to rectify a debtor's failure to follow and comply with established and required notice procedures. This argument improperly attempts to shift the burden of notice off of the debtors and buyers, and to place their obligations onto the backs of known creditors.

*In re Main,* 157 BR. 786 (W.D. Pa. 1992) - - a case cited and discussed in Chemtura's moving brief (at 28-29) but completely ignored by ITG, specifically refutes any such argument, holding that it is unreasonable to expect a large corporation to figure out where a notice should be sent where the debtor fails to include the simple term "Officer" in the address. *Id*. at 790.[8]

---

[8] The sole case ITG cites is *Lawrence Tractor Co. v. Gregory*, 705 F.2d 1118 (9th Cir. 1983), a 25 year-old case from another circuit based upon "inquiry notice," which is contrary to the controlling law within the

The fact is that the Cure Amount notice ended up in the "dead file" only because ITG and the debtor failed to list Chemtura as a claimant, failed to provide Chemtura with a host of required notices prior to the sale, failed to serve the motion, failed to notify Pamela Missal (even though it was using her letterhead), and failed even to place the term "officer" on the belated and misleading Cure Amount notice that it did finally send to Chemtura's mailroom.

Had any of these numerous Code requirements been met, Chemtura officials with knowledge of the claim would have had notice that these claims were about to be extinguished, and could have taken steps to oppose the sale.[9]

---

Third Circuit. Here, even actual notice cannot substitute for proper formal notice required by the Code. *In re Trans World Airlines*, 96 F.3d 687, 690 (3d Cir. 1996); *In re LaRouce Indus., Inc.*, 307 B.R. 774, 781 (D. Del. 2004); *In Re Carematrix Corp.*, 306 B.R. 478, 486 (Bankr. D. Del. 2004); *see also, In re Broomall Indus., Inc.*, 786 F.2d 401, 403 (Fed. Cir. 1986); *In re Unioil*, 948 F.2d 678, 683-84 (10th Cir. 1991) (no duty of inquiry).

[9]   ITG raises four other red herrings that can be addressed *seriatim*.

In its focus on attempting to blame Chemtura for ITG's and the debtor's failures, ITG even argues that, because Chemtura did not file a notice of appearance, it was Chemtura's fault that the debtor failed to electronically serve Chemtura with the sale notice on November 21, 2003. However, ITG admits that the only notice sent to Chemtura was the Cure Amount notice and that this notice was not served until November 26, 2003. Chemtura was not electronically served because the debtor and ITG failed to provide it with any prior notice of the bankruptcy.

ITG spends three pages of its brief arguing that there is a presumption that when notice is served by mail the party that it's addressed to received it. (*See* ITG Opp. Brf. at 23-25). Yet, that Chemtura received the Cure Amount notice is not an issue on appeal.

Another red-herring raised by ITG is that the Cure Amount notice went undiscovered until discovery in the action below. ITG fails to inform the Court that the debtor and ITG both took the initial position that no notice of any kind had ever been sent to Chemtura. **All** parties were misled in their searches by the fact that: (a) the debtor never listed Chemtura with the Court as a known creditor (even though ITG and the debtor identified Chemtura as such in the un-served sale motion documents); and (b) neither the debtor nor ITG filed any evidence of any Cure Amount service until many months after the sale had already been approved. The subsequent finding of the Cure Amount notice was a surprise to all parties. In any event, it is a meaningless issue as that document itself was defective for notice purposes both in content and under the rules of service.

Finally, ITG contends that Chemtura is violating the Bankruptcy Court order by pursuing its claim against ITG in the New Jersey action. This assertion is misleading. After the Bankruptcy Court entered its order, Chemtura offered to dismiss its cross-claims against ITG in the New Jersey action. However, because Chemtura was appealing the Bankruptcy Court decision, it has to preserve its ability to reinstate its claim against ITG, if the District Court reverses the Bankruptcy Court's order. Accordingly, Chemtura needed any dismissal to acknowledge this possibility. ITG refused Chemtura's proposal. It offered two options.

**CONCLUSION**

For all of the above reasons, and those set forth in Chemtura's moving brief, the Court should declare that the asset sale Order does not apply to Chemtura or to Chemtura's successor liability claims.

Respectfully submitted,

| | |
|---|---|
| **ADELMAN LAVINE GOLD AND LEVIN,** | **SCHNADER HARRISON SEGAL & LEWIS LLP** |
| **A Professional Corporation** | A Pennsylvania Limited Liability Partnership |
| **Co-Counsel for Crompton Colors, Inc.** | **Attorneys for Crompton Colors, Inc.** |
| | |
| | By:  /s/ John M. Amrmstrong |
| By:  /s/ Jonathan M. Stemerman | JOHN M. ARMSTRONG |
|      JONATHAN M. STEMERMAN (No. 4510) | New Jersey Managing Partner |
|      919 North Market Street, Suite 710 | RICHARD A. BARKASY |
|      Wilmington, DE  19801 | JERRY L. TANENBAUM |
|      (302) 654-8200 | Woodland Falls Corporate Park |
| | 220 Lake Drive East, Suite 200 |
| | Cherry Hill, New Jersey  08002-1165 |
| | (856) 482-5222 |

---

Either Chemtura dismiss its claim against ITG with prejudice, in which case, Chemtura would not be able to bring a claim against ITG, even if the District Court reversed the Bankruptcy Court's order, or ITG must stay in the case to protect its interests. Chemtura was not willing to dismiss its claim against ITG *with prejudice*. Accordingly, ITG's decision to stay in the New Jersey action is a decision it has made on its own.